AUGUSTA RIKER, ADMINISTRATRIX OF THE ESTATE OF HARRY RIKER, DECEASED, PLAINTIFF-RESPONDENT, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued October 6, 1942—Decided February 2, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the appellant, *Drewen & Nugent (John P. Nugent,* of counsel).

For the respondent, *Harold Krieger.*

The opinion of the court was delivered by

HEHER, J. The question at issue is whether there is a tangible basis in the proofs for the finding of the District Court that plaintiff's decedent suffered death by accidental means within the purview of a life insurance policy obligating the defendant insurer to pay certain additional benefits upon receipt of "due proof" that the insured had "sustained bodily injuries, solely through external, violent and accidental means, * * * resulting, directly and independently of all other causes," in his death.

The essential facts are not in dispute. Defendant adduced no evidence in contravention of the case made by plaintiff. The deceased was employed at Jersey City by the National

Grocery Company. On the evening of June 3d, 1938, he joined employees of this company and other groups on a steamboat excursion up the Hudson River from Jersey City. He was a "very jolly" young man of the age of twenty-five years, and apparently in robust health. He spent the evening "dancing and kidding and fooling." As the boat was "moving into shore" on the return trip, the deceased removed his coat, vest, tie and shoes, and, declaring his intention "to beat the boat in," dived into the water. Before going overboard he addressed a friend standing nearby: "Watch them [his clothes], Scotty. Pick them up when you get to Jersey City." The boat was stopped, but the deceased could not be found. His body was recovered from the water several days later. The death certificate issued by the medical examiner of the City of New York was introduced into evidence by consent; and it disclosed the cause of death as "asphyxia by submersion" under "undetermined circumstances." The deceased was "a very good swimmer."

It is the insistence of the insurer that the coverage of the accidental death benefit clause does not extend to "an unforeseen, unexpected death resulting from means which are intended and deliberate." There is no contention of suicide. Conceding that the insured "fully intended to reach the shore," and that he was "known to be a good swimmer and presumably had indulged in such demonstrations on other occasions," and characterizing his conduct as the "rash act of a youth eager to demonstrate his physical or athletic prowess," the specific point made is that there was an utter lack of evidence of "any unintended chance happening intervening the inception of deliberate means and the unintended result." A distinction is found between "an unexpected, unusual, unforeseen result brought about by means voluntarily undertaken" and "a like result occasioned by means which are accidental." It is said that the deceased "voluntarily assumed the many risks inherent in so foolhardy an exploit" and "recklessly hazarded the very result which in fact occurred." The point is not well taken.

The term "accidental means" was employed in the policy in its usual and popular sense, i. e., as signifying a "happen-

ing by chance; unexpectedly taking place; not according to the usual course of things; or not as expected." The means are "accidental" if, "in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury." If the result "is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way," the means are not in this category. *Lower* v. *Metropolitan Life Insurance Co.*, 111 *N. J. L.* 426. Here, an inference of death by accidental means within this definition is reasonably derivable from the evidence. It is to be presumed, indeed it is conceded, that the deceased intended to reach the nearby shore in safety, and was not in doubt as to his ability to do so; and it is fairly deducible that his failure was due to intervenient accidental means as so defined. Compare *United States Mutual Accident Association* v. *Barry*, 131 *U. S.* 100, 121; 33 *L. Ed.* 60, 67.

The inquiry is whether there is any evidence which, if accepted and given its fullest probative force, reasonably tends to sustain the pleaded cause of action. Is it such that fair and reasonable men would be justified in concluding that the *onus probandi* had been sustained? *Sivak* v. *New Brunswick*, 122 *N. J. L.* 197. It need not have the quality of certainty. Indirect or circumstantial evidence meets the legal standard if it preponderates in favor of the tendered hypothesis. That must be a rational inference, *i. e.*, such as is based upon a preponderance of the probabilities according to the common experience of mankind. It must be a presumption grounded in reason and logic. It is not easy to lay down with precision the line of demarcation between a just and reasonable inference and mere conjecture or surmise. The accepted standard of persuasion governing the triers of the facts is that the determination be probably founded in truth. *Austin* v. *Pennsylvania Railroad Co.*, 82 *Id.* 416; *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.*, 111 *Id.* 487. A mere quantitative preponderance does not suffice. It is requisite that the evidence be such as to lead a reasonably cautious mind to that conclusion. Professor Wigmore, in the recent revision of his work on evidence, quotes from a treatise by Professor Trickett on the doctrine of preponder-

ance of evidence: "There is no measure of the weight of evidence (unless the witnesses on the evidential facts are counted) other than the feeling of probability which it engenders." *Wigmore on Evidence* (*3d ed.*), § 2498.

So assayed, there is a tangible basis in the evidence here adduced for the judgment under review. It is fairly inferable that an untoward and unexpected mishap was the means of the insured's drowning. He was a strong swimmer; and, as stated, the proofs clearly show that he designed to swim to shore. That an intervening accident was the agency of death is a reasonable hypothesis—a natural presumption. Reason guided by common experience leads to that conclusion. That the insured's act was foolhardy does not serve to make the provision for double indemnity inoperative. The clause is to be construed most strongly against the insurer.

Judgment affirmed, with costs.