ELEANOR SHIELDS, FORMERLY ELEANOR BEELITZ, PLAINTIFF-RESPONDENT, v. THE PRUDENTIAL IN-SURANCE COMPANY OF AMERICA, DEFENDANT-AP-PELLANT.

Argued February 26, 1951—Decided March 19, 1951.

*Mr. John P. Nugent* argued the cause for appellant (*Messrs. Nugent & Rollenhagen,* attorneys).

*Mr. Frank G. Schlosser* argued the cause for respondent (*Messrs. Cruden & Fitzpatrick,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. This is a Superior Court case certified here. It involves the question as to whether or not double indemnity is to be paid on a life insurance policy under its terms.

The pertinent clause provides for payment of double the face amount of the policy "upon receipt of due proof that the death of the Insured occurred * * * directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means."

The policy was in the face amount of $5,000 and named the insured's wife, the plaintiff herein, as the beneficiary. If the

death of the insured was accidental within the terms of the policy, the plaintiff is entitled to recover the additional $5,000 which she seeks.

The evidence is not controverted and consists mainly of the plaintiff's testimony as to what transpired, supplemented by one of her children.

The deceased was a mechanic, 46 years old, weighing 207 pounds, while his wife weighed only 100 pounds. He had been accustomed, over the years, to coming home intoxicated and would then become violently quarrelsome and abusive, on occasions requiring the calling of the police in order to bring the desired tranquility and calm to the domestic scene. Often, in addition to being drunk and aggressive, he beat his wife, and it was no novelty for him to threaten to kill her.

The altercation which resulted in his death was patterned closely after this general picture. He argued with his wife, used violent and indecent language, left the house, returned in a worsened condition, became more abusive, indulged in obscene expostulations and then beat his wife about the face with his fists. The flare-up continued for an hour and the wife was cut, bruised and bleeding. Their five-year-old son remonstrated with his father and was struck. An older son, Howard, endeavoring to protect his mother, was knocked unconscious.

Meanwhile, the wife had run into the living room and was seated on the sofa, holding her one-year-old baby, when the insured entered with a rifle in his hand. He pointed the gun at her. It was an old 22-rifle which had been around the house for years and with which the children had often played. She became apprehensive, not about her own safety but about possible harm to the child. She sprang at the insured, attempting to take the gun away from him, and during the struggle for possession it went off. The insured slumped to the floor and died.

The court below denied a motion for a direction of a verdict for the defendant and submitted the case to the jury, leaving it to them to determine from the evidence whether or not the death occurred within the meaning of the accidental clause

of the policy and also whether the death of the insured was the natural and probable consequence of his own act.

The jury returned a verdict in favor of the plaintiff and the insurance company now appeals, contending the motion made by it for a direction should have been granted.

It asserts that where the insured deliberately and criminally battered and assaulted his wife and threatened her life with a loaded rifle, his death following the discharge of the rifle in the struggle for its possession was the natural and probable consequence of his own course of criminal conduct and was therefore not caused by accidental means, and contends that "the test, abundantly supported by text writers and authorities in and out of New Jersey, is that a result which is the natural and probable consequence of a person's act or of his course of conduct is not an accident, nor is it the product of accidental means. Such a result is either the deliberate, intentional design of the actor or it falls under the legal maxim that every person must be held to intend the natural and probable consequence of his acts."

There is much authority in accord with the appellant's view. *Am. Jur., vol. 29, p. 733*, recites:

"Clearly, injuries or death sustained by an insured in an encounter brought about by an assault committed by him upon another with a deadly weapon or upon one who he knew had such a weapon are not sustained by accident or accidental means within the meaning of an accident policy since under such circumstances the injury or death is the natural and probable consequence of his act."

The same legal principle, in almost *verbatim* language, is supported in *Couch on Insurance, vol. 5, p. 4068, § 1158*, and in *Cooley's Briefs on Insurance (2d ed.), vol. 6, p. 5249*, while in 1 *Appleman, Insurance Law and Practice* (1941), § 391, a somewhat different concept is vouched for:

"And even though the chain of circumstances leading to the injury was set in motion by the insured's voluntary act, if the result was not the normal result of his actions, or was reasonably unforseeable, the insured has been permitted to recover under the doctrine of 'accidental means.' "

The conflict of authority was noted in *Korfin v. Continental Casualty Co.,* 5 *N. J.* 154 (1950):

"We recognize that there is considerable division of authority upon the construction of policies using the term 'accidental means.' Some adhere to the view that if the means which cause an injury are voluntarily employed, the resulting injury although entirely unusual, unexpected and unforeseen is not produced through accidental means.

In this jurisdiction, however, our courts, following the rule laid down in the case of *United States Mutual Accident Association v. Barry,* 131 *U. S.* 100, 9 *S. Ct.* 755, 33 *L. Ed.* 60 (*U. S.* 1889), have held that it is sufficient to render the means accidental, if in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury. *Lower v. Metropolitan Life Insurance Co.,* 111 *N. J. L.* 426 (*E. & A.* 1933); *Riker v. John Hancock Mutual Life Ins. Co.,* 129 *N. J. L.* 508 (*Sup. Ct.* 1943). In the latter case, 129 *N. J. L.* at *pages* 510-511, it was stated that 'The term "accidental means" was employed in the policy in its usual and popular sense, *i. e.,* as signifying a "happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected." ' Any ambiguity in the terms of the policy is to be resolved in favor of the insured. *Caruso v. John Hancock Mutual Life Insurance Co.,* 136 *N. J. L.* 597, 598 (*E. & A.* 1947).

It may be generally stated therefore that where something unforeseen, unusual and unexpected occurs in the act preceding an injury or death, although the act be voluntary and intentional, the injury is one which arises through accidental means."

In *Walters v. Prudential Ins. Co.,* 116 *N. J. L.* 304 (*E. & A.* 1936), the insured was killed in an encounter in which he was the aggressor. He attempted to force a man whom he had previously beaten and abused, who then had a drawn revolver, through a kitchen window opening upon a court some 16 feet below. It was held error to have submitted the case to the jury, the court holding the fatal result was the natural and probable consequence of his own vicious and criminal act. Where the insured "culpably provokes or induces the act causing his injury or death, then the result is not accidental."

In *McNamara v. Metropolitan Life Ins. Co.,* 133 *N. J. L.* 48 (*Sup. Ct.* 1945), the court said:

"The insured was the aggressor, he provoked the fight and there is no right of recovery in such a case under the language used in this policy. He invited the encounter and the double indemnity feature

falls. If the rule of foreseeable consequences applied—but we think it does not—the result would be the same since a fist fight may result fatally."

That disposition and reasoning are not, however, altogether applicable to the facts at hand as the court there leaned heavily on a policy provision prohibiting a recovery if death "is the result of participation in an assault or felony."

On appeal, the Court of Errors and Appeals, 134 *N. J. L.* 231 (1946), affirmed but found no liability, on the broader ground that "while death was due to external and violent means, it was not due to any accidental means," saying:

"When two men go out on the sidewalk to indulge in fisticuffs, we are unable to see how there can be any accident involved in the fact that the fatal blow was struck in the course of the fight."

*Walters v. Prudential, supra,* and *McNamara v. Metropolitan, supra,* are not cited in *Korfin v. Continental Casualty Co., supra,* nor are the principles there enunciated embraced in the *Korfin* decision, which does not foreclose a recovery because "the act be voluntary and intentional" but bottoms entirely on the rule of "foreseeable consequence." Applying this test to the facts in the case there under consideration, it decided: "There was in the act which preceded his death 'something unforeseen, unexpected, unusual' " and the recovery was sustained, the court justifying its interpretation by concluding it is "based upon sound logic and in consonance with the common understanding of these words."

The contrasting authorities in the various jurisdictions are intelligently set forth in 4 *A. L. R., p.* 719, where many of the cases in the briefs here submitted are noted and aligned in their places for or against the respectively espoused doctrines. *Taliaferro v. Travelers' Protective Ass'n.,* 25 *C. C. A.* 494, 49 *U. S. App.* 275, 80 *Fed.* 368, is cited as the leading case in the one school of thought, while *Lovelace v. Travelers' Protective Ass'n.,* 126 *Mo.* 105, 28 *S. W.* 877, heads the opposition.

In our jurisdiction, the decision was made and the die cast by *Korfin v. Continental Casualty Co., supra.* In the

case *sub judice,* therefore, the query is whether, under the existing circumstances, the husband should have foreseen that his conduct would probably result in his death.

In denying the appellant's motion, the court below observed:

"Now, the question in this case is whether or not the deceased should have anticipated the result of his attack upon his wife. And our latest decision says,

'It is sufficient to render the means accidental if the act which precedes the injury was something unforeseen, unexpected, unusual, although the act be voluntary and intentional.'

Now, in this case we do not know that the husband actually intended to shoot his wife, because there is a question as to whether or not the gun was loaded, or whether or not he knew it was loaded. There is also the further fact that this deceased weiged 207 pounds, a man whose daily work was that of a mechanic, which developed his muscles, he was a man apparently in good health, and it would appear that he was very much stronger than his wife.

There is a question raised by these facts as to whether or not the deceased could have foreseen the result of his act."

The rule is settled that upon motions for a dismissal, the equivalent of motions for a nonsuit or directed verdict under the former practice, the court cannot weigh the evidence but must take as true all evidence which supports the view of the party against whom the motion was made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. *Visaggi v. Frank's Bar & Grill, Inc.,* 4 *N. J.* 93 (1950). In *Bachman Choc. Mfg. Co. v. Lehigh Wrhse. & T. Co.,* 1 *N. J.* 239 (1949), it was said:

"It is well established that a case should be submitted to a jury unless there are no disputed facts or disputed inferences to be drawn from undisputed facts."

Similar sordid and turbulent outbursts had admittedly occurred frequently before and were an integral part of the final culmination. The circumstances as here developed, in our opinion, did not as a matter of law factually forecast death as a natural and probable consequence, as the record bespeaks the frequency of parallel and almost identical disturbances over a long period of time when death was not adumbrated nor

did it occur. Threats to kill were made so often they became commonplace and no attention was paid to them. "He always did threaten to kill me anyhow."

On the fatal occasion there was a variation to the established long-term pattern—the use of a rifle which the wife "assumed did not work" and "thought was out of order." The husband had it "before we were married" and "allowed the children to play with it." There is no proof he knew it was loaded.

There was also a deviation for the first time when the wife attempted to fight back and do something about the abuse and threats heaped upon her. "I just struggled with him trying to get the gun away from him. * * * I guess he didn't expect that because I was so afraid of him I always took everything. I never tried to fight him off."

We cannot, under the circumstances narrated here, decide as a matter of law, even with the intoxication and his threats, that the husband intended to kill his wife because a quarrel ensued or that the natural or probable consequence was that the wife, who had submitted docilely to the same utterances and abuses over the years, would, when she was again threatened and assaulted by her drunken husband, unexpectedly turn upon him and struggle for possession of the gun, resulting in his being shot to death.

Although there is no conflicting testimony, nevertheless disputed inferences can be drawn from the undisputed facts and reasonable men might well differ as to the conclusion to be reached. Under the circumstances here present, we see no error in the submission of the case to the jury, which was the course pursued by the trial judge below.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and ACKERSON—4.

*For reversal*—Justice HEHER—1.