Peggy Joyce **HENKEL**

v.

**METROPOLITAN LIFE INSURANCE COMPANY.**

**Civ. No. 258.**

United States District Court
W. D. North Carolina, Statesville Division.

Sept. 30, 1955.

Theodore F. Cummings, Hickory, N. C., for plaintiff.

Womble, Carlyle, Martin & Sandridge, Winston Salem, N. C., for defendant.

WARLICK, District Judge.

This action was instituted by plaintiff on December 28, 1953 to recover under the terms of a policy of life insurance issued by the defendant on the life of her late husband, Orange G. Henkel, Jr. Originally it was filed in the Superior Court of Catawba County, North Carolina, but on the grounds of diversity and amount was removed to this court. 28 U.S.C.A. § 1332.

Plaintiff, Peggy Joyce Henkel, wife of the insured, was named beneficiary in that certain policy of insurance, No. 19387602, issued on the first day of October, 1952, on the life of her husband, in the principal sum of $5,024.00. In consideration of an extra monthly premium the policy carried an Accidental Means Death Benefit in the following words:

"Accidental Means Death Benefit —The Company promises to pay to the Beneficiary under this Policy, in addition to the amount otherwise payable according to the terms of this Policy, an additional sum equal to the Initial Amount of Insurance shown on page 1, upon receipt at the Home Office of due proof of the death of the Insured, while this provision is in effect, as the result, directly and independently of all other causes, of bodily injuries caused solely by external, violent, and accidental means, and that such death shall not have occurred (a) more than 90 days after the date of such injuries, or (b) as the result of or by the contribution of disease or bodily or mental infirmity or medical or surgical treatment therefor or infection of any nature unless such infection is incurred through an external visible wound sustained through violent and accidental means, or (c) as the result of self-destruction, whether sane or insane, or (d) as the result of travel or flight on any species of aircraft if the Insured has any duties relating to such aircraft or flight, or is flying in the course of any aviation training or instruction, or any training or maneuvers of any armed forces, or (e) as a result of participating in or attempting to commit an assault, or (f) as a result of an act of war."

That at the time of his death on September 19, 1953, said policy of insurance was in full force and effect, and subsequently the defendant paid to the plaintiff, beneficiary, the face amount of the policy in the sum of $5,024. This controversy centers around the Accidental Means Death Benefit and such amount thereof is that sought in this particular action.

The manner of his death as is shown from the evidence and the factors surrounding it, are found to have come about as follows:

The insured, Orange G. Henkel, Jr., was a young man 25 years of age, of fine physique, approximately six feet tall and weighing about 165 pounds, and plaintiff, beneficiary, in this action, was his wife. They lived in Hickory in Catawba County, North Carolina. The insured, for a year or more prior to his death, was employed by the Eastern Finance Company, an institution having one of its places of business in Greenwood, South Carolina, with headquarters located on Waller Avenue in that city. Formerly he worked for the same company in his home town of Hickory as assistant manager, and was working for it at the time the policy herein sued on was delivered to him. He and his family had not moved their place of residence and his wife, the beneficiary, continued to reside in Hickory since he had gone to South Carolina

to accept this employment only about two months before his death. The case was heard by the court without a jury, and from the evidence offered at the trial, the facts arising from his death took place in this sort of way:

Two police officers of the City of Greenwood by the names of Hollingsworth and Hunter, in consequence of some sort of telephone conversation, went to a residence occupied by a Mr. and Mrs. Gunter on Durst Street Extension in said city, and on learning of some supposed complaint from this couple, agreed on a plan to apprehend said person supposedly attempting to molest Mrs. Gunter. Thereupon one of the officers drove the patrol car with Gunter accompanying him and with the other officer riding in the back seat of the Gunter car while it was being driven by Mrs. Gunter enroute to the place of business known as Cooper's Furniture Store, located on the corner of Waller Street and Seaboard Avenue in said city. Shortly thereafter it would appear one of the officers heard a door close and a car door slam,—then a motor started and thereafter noticed a car proceeding toward the furniture store, along Waller Street. This noise evidently came from the general direction of the place of business on Waller Street where the insured was employed, located two blocks south of Seaboard Avenue and where likely he had just previously been. The time was about twelve-forty (12:40) in the morning. The car driven by the insured apparently stopped or slowed down at the corner of Seaboard and Waller, and the officer testified that in his opinion the occupant of the car said something to Mrs. Gunter, who evidently had gotten out of the car. Immediately following it would seem that Mrs. Gunter came to her car, which evidently she had left for the time being, and in consequence of some conversation with the officer, proceeded to move her car to a vacant lot at the rear of the furniture store. The evidence then tends to show that while the officer was walking on the street approximately sixty feet from the car of the insured, the car being driven by the insured continued to move. That the officer undertook, as he testified, to challenge the occupant of the car to stop,—stating that he called out some several times, and that then he fired his pistol into the air. That the car driven by the insured then drove off rapidly; whereupon the patrol car which had been parked by Officer Hollingsworth on Gibbs Street one block south of Seaboard, started in rapid pursuit, blowing its siren, and blinking its red light. That this pursuit continued for approximately one and one half miles, when the insured, driving approximately 90 miles an hour, as testified to by Hollingsworth, failed to negotiate a curve, ran on to the dirt shoulder of the road, causing his car to turn over, throwing him out onto the ground a distance of about 45 feet from where the car came to rest, and killing him instantly,—his neck being broken and other injuries being suffered,—any one of which would have brought about his death.

Neither of the officers knew the deceased, the insured in the policy, and evidently neither had ever seen him before. He had only been working in Greenwood for approximately two months. He had no arrest record in Greenwood or at any other place. Apparently the Gunters didn't know the deceased, and evidently no one seemed to know, in so far as the evidence discloses, whether he was the individual that the officers and the Gunters were seeking, or whether he, leaving his place of business, passed by, going on his way to his room at that hour in the morning. Neither of the officers had any process for his arrest and none had issued from any court. No offense had been committed in the presence of the officers and as the evidence tends to show, they had no personal knowledge of any act or deed which would otherwise give them the right to effect an arrest or bring about his detention or stop and detain him or hold and search his automobile.

The Gunters did not testify and the whole matter apparently is shrouded in mystery. The insured's car was a 1950

model Chevrolet. The patrol car was a 1954 model Ford. The entire occurrence from the evidence, took place in a relatively short period of time. Piecing together the officer's testimony, the actual chase of the insured's car lasted one minute, in covering the estimated one and one half miles at ninety miles an hour. The insured does not speak in his behalf and the actual facts found must be predicated somewhat on conjecture. I have pieced it together as best I can from the evidence heard.

I imagine that the terms "accidental death" and death by external accidental means have been up for determination by courts of record about as often as any other individual factor. The number of decisions that appear are voluminous. In many courts the terms are held synonymous. Others hold that they are not. There is a distinct cleavage of judicial opinion.

Judge Brogden in Mehaffey v. Provident Life & Accident Insurance Company, 205 N.C. 701, 172 S.E. 331, 333, in undertaking to give an interpretation of "accidental means" said: "The interpretation of the term *accidental means* is not uniform, but in large measure the judicial variability arises from the dissimilarity of facts involved."

I have not been given the benefit of any South Carolina decisions on this subject as none are cited by counsel for either party. The accident causing death occurred in that state so in the absence of such citations I am forced to determine the law in this case from outside sources. The Supreme Court of North Carolina holds that the terms are not synonymous, adopting the view that there is a distinct difference in the meaning of the two terms and that the coverage of a policy of insurance is materially affected by the use of the one or the other. Fletcher v. Security Life & Trust Co., 220 N.C. 148, 16 S.E.2d 687.

Mr. Justice Blatchford gives this difference to the terms: "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted [from the accident or] through accidental means." U. S. Mut. Acc. Ass'n v. Barry, 131 U.S. 100, 121, 9 S.Ct. 755, 762, 33 L.Ed. 60. This definition was adopted by the Supreme Court of North Carolina in Harris v. Jefferson Standard Life Ins. Co., 204 N.C. 385, 168 S.E. 208; Mehaffey v. Provident Life & Accident Ins. Co., 205 N.C. 701, 172 S.E. 331.

Mr. Justice Cardozo in his dissenting opinion in Landress v. Phoenix Mut. L. Ins. Co., 291 U.S. 491, 496, 54 S.Ct. 461, 463, 78 L.Ed. 934, sets out a very understanding conception of the two terms, and though his thoughts were not adopted as the law of the case, still his opinion contains the fundamental law which is universally accepted.

"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. 'Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.' Halsbury, L. C., in Brintons v. Turvey, L.R. (1905) A.C. 230, 233 [2 Ann.Cas. 137—H.L.]. Cf. Lewis v. Ocean Accident & G. Corp., 224 N.Y. 18, 21, 120 N.E. 56, 7 A.L.R. 1129; Innes v. Kynoch, (1919) A.C. 765, 775 [9 B.R.C. 478—H.L.]. On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accidental insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. Mutual Life Insurance Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235 [238], 31 A.L.R. 102; Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 322, 48 S.Ct.

512, 72 L.Ed. 895 [900]. The proposed distinction will not survive the application of that test.

"When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means."

I conclude from the evidence in this case that the death of the deceased came about under such circumstances as to fully comply with the terms of the policy of insurance under that section devoted to "Accidental Means", and that plaintiff is entitled to have and recover of the defendant the sum of $5,024.00 as herein sought.

Counsel will submit decree.