96 N.J. Super. 520 (1967)
233 A.2d 416
FRANK H. SCHWARTZ AND LOUISE SCHWARTZ, PLAINTIFFS,
v.
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 31, 1967.
*521 Mr. Frederick K. Klaessig for plaintiffs (Messrs. Klaessig and Winograd, attorneys).
*522 Mr. Edward J. Russo for defendant (Messrs. Nugent, Russo & Tumulty, attorneys).
BOTTER, J.S.C.
Plaintiffs' 18-year-old son, Robert Schwartz, was killed when his automobile crashed at high speed while pursued by the police. Plaintiffs sue for the $10,000 accidental death benefit under an insurance policy on the life of their son. The jury before whom the case was tried was ordered to return a special verdict pursuant to R.R. 4:50-1. This opinion will determine what judgment should be entered on the special verdict. Also to be resolved are motions for judgment made by plaintiffs and defendant before the case was submitted to the jury. Decision was reserved on these motions under R.R. 4:51-2(a). The basic question is whether the death of an insured is "accidental" within the meaning of a triple indemnity life insurance policy if the insured voluntarily exposed himself to a high degree of danger by driving recklessly to escape apprehension.[*] The insurance company also contends that recovery is barred by specific policy exclusions for death resulting from "intentionally self-inflicted injury" and "participation in an assault or a felony." In terms of the exposition of insurance law in New Jersey this case reviews old problems in a setting not previously dealt with in any reported decision.
*523 On October 30, 1964 at about 6:30 P.M. Robert Schwartz left his home in Bogota, New Jersey. He was driving a 1959 white Mercury convertible. He was later seen with Ronald Ferretti at a candy store, and shortly after 7 P.M. they were seen driving out of a gasoline station. We know nothing further of their activities that evening until about 10:50 P.M., at which time the Schwartz car attracted the attention of Patrolman Liberati of the Orangeburg, New York Police Department. The car was going south on Route 303 at a high speed, and officer Liberati went in pursuit. Route 303 is a highway running generally in a north-south direction. It runs from Orangeburg, New York, to the New Jersey border, where it leads into Livingston Street in Northvale, New Jersey. Route 303 has two traffic lanes in each direction, separated by a double yellow center line. The speed limit is 50 miles per hour.
The chase was described in a way that suggests that Robert Schwartz took many chances, and so did his pursuer, but traffic was light and the road conditions good, and the young driver probably expected to escape without accident or injury. Patrolman Liberati testified that the pursuit covered approximately five miles. They traversed three intersections controlled by traffic lights, and the jury specifically found that the Schwartz car was driven at excessive speeds through two red lights. Patrolman Liberati testified that during the *524 five-mile run he did not encounter more than one other vehicle traveling south, although traffic was heavier going north. In its special verdict the jury found that the Schwartz car was driven at dangerous speeds, at times reaching 80 miles per hour. (The jury found that the car was not driven in excess of 90 miles per hour, as testified by the pursuing police and by a witness who observed the car shortly before it crashed.) The jury found that the Schwartz car was driven at times on the wrong side of the road and at times with the headlights off in an apparent effort to elude the police. Nevertheless, Patrolman Liberati testified that it was a clear night and he could see the Schwartz car even with its lights off.
Ultimately, they came upon a curve in the road which the Schwartz car failed to negotiate. Just north of the curve Route 303 has a downhill grade and it bends to the left in a wide sweep as it comes into Northvale. The Schwartz car went off the right hand side of the road, struck a pile of dirt, flipped over two times and landed upside down approximately 150 yards south of the state line.
Patrolman Vollmer of the Northvale Police Department was at the scene. He testified that although the speed limit was 50 miles per hour at that time, in his opinion a safe speed for negotiating the curve was 40 miles per hour. In summation to the jury plaintiffs' counsel urged that this downhill curve was an unexpected or unforeseen obstacle which the boy could not master. Apparently the jury agreed. The jury found that the driver of the car should have foreseen that serious injury or death was a highly probable result of the manner in which he drove his car. However, the jury also found that in the course of the drive which preceded the crash, considering all the circumstances, "something unforeseen, unusual and unexpected" occurred which caused the car to crash. The jury found that the driving was not "so obviously dangerous as would normally result in loss of life." The jury specifically found in conclusion. *525 that Robert Schwartz died as the result of an "accidental" injury.
Defendant's insurance policy provides an accidental death benefit on proof that "death resulted solely from accidental bodily injury." Accidental death is defined in the policy as "death resulting directly and solely from * * * an accidental injury * * *." This ingenuous language has been troublesome in the past. Deciding what is an accident and what is an injury effected by accidental means, as distinguished from an accidental result of normal means, has caused the courts considerable difficulty. The history of the problem and most of our cases have been thoroughly explored in Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511 (1963).
We start with the premise that insurance policy terms should be interpreted in their usual and popular sense to meet the reasonable expectations of policyholders, and any ambiguity should be resolved in favor of the insured. Gerhardt v. Continental Ins. Co., 48 N.J. 291, 297 (1966); Linden Motor Freight Co. Inc., supra, 40 N.J., at p. 525; Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961); Korfin v. Continental Casulty Co., 5 N.J. 154, 158 (1950). It has been said that "accident" and "accidental" in their common or popular sense mean something unforeseen, unexpected, unusual  a happening by chance, not according to the usual course of things. Linden, supra, at p. 522; Korfin, supra, at p. 158. Frequently it is said that death is not effected through accidental means if the actor should have foreseen that his conduct would probably result in death. Shields v. Prudential Ins. Co. of America, 6 N.J. 517, 523 (1951); see also Linden, supra, 40 N.J., at p. 536. Thus, if the injury which produces death is the natural and probable consequence of an act or a course of conduct, it has not been deemed the result of accidental means, primarily because the law applies a maxim that every man must be held to intend the natural and probable consequences of his deeds. See Korfin, supra, 5 N.J., at p. 159. In *526 dictum, referring to cases where recovery was barred because decedent assaulted someone and was killed in the ensuing struggle, Justice Hall in Linden, supra, 40 N.J., at p. 536, wrote that "no reasonable person would think that an accident insurance company should be required to pay where the result was brought on by the insured under circumstances by reason of which he realized or should have realized the probability of the outcome." However, the cases recognize that one can voluntarily expose himself to unnecessary danger so long as death does not seem a highly probable or normal result. Also, recovery is allowed for conduct entirely voluntary and intentional "if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury * * *." United States Mutual Accident Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60 (1889); Linden, supra, 40 N.J., at p. 515; Shields, supra, 6 N.J., at p. 522; Korfin, supra, 5 N.J., at p. 158; Riker v. John Hancock Mutual Life Ins. Co., 129 N.J.L. 508 (Sup. Ct. 1943).
The courts have tried to explain a layman's expectations in language which would surely puzzle many laymen, and, perhaps, some philosophers as well. Mr. Justice Cardozo's influential dissent in Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 499, 54 S.Ct. 461, 464, 78 L.Ed. 934, 938, 939 (1934), has asked, in effect, why isn't an accident an accident  as laymen would speak of the event? Justice Hall has replied in Linden, supra, 40 N.J., at p. 520: "This loose test would appear to be almost subjective." More recent criticism of the lack of an adequate test can be found in Beckham v. Travelers Ins. Co., 424 Pa. 107, 225 A.2d 532 (Sup. Ct. 1967). Our highest court recently has complained of an insurance company's inability to speak clearly enough for laymen to understand. Abhorred are "technical encumbrances and hidden pitfalls." Gerhardt, supra, 48 N.J., at p. 297. However, the protests of the courts have not made the problem go away. Even if we were to use the Cardozo test and ask if the event would be commonly spoken *527 of as an accident, we must acknowledge that laymen themselves may speak differently of the same events. Thus, it is compelling for the law to find an answer that will produce consistent results where the essential facts are not in dispute.
Negligence is sometimes defined as imprudent conduct which creates a foreseeable risk of harm as a natural consequence. No one has doubted that recovery should be allowed where the insured died of injuries created by his own mere negligence, even though some injury was a foreseeable consequence. Intentional, unnecessary exposure to risks, as well as the negligent creation of risks to one's own safety, may not prevent the result from being accidental. Riker, supra; Union Central Life Ins. Co. v. Cofer, 103 Ga. App. 355, 119 S.E.2d 281 (Ct. App. 1961); 6 Couch on Insurance, § 1489, p. 5339 (1930). As noted above, something unexpected may intervene to increase the risk. This was found in Riker where a person known as a good swimmer drowned after diving off a Hudson River excursion boat with the intention of swimming to shore. The court inferred as a fact that something unexpected must have happened. In Walters v. Prudential Ins. Co. of America, 116 N.J.L. 304 (E. & A. 1935), a divided court denied recovery where decedent was shot after he assaulted a man who had a revolver and tried to push him out of a window 16 feet above the ground. But in Shields, supra, our Supreme Court affirmed recovery where a man in a drunken state had beaten his wife and threatened her with a rifle. When the wife struggled to take the gun away it went off, and the insured was killed. The court found that the sudden resistance of a wife who had submitted to similar abuses in past years was the unusual or unforeseen event which made it an accident.
Courts in other states have dealt with death resulting from driving recklessly at high speeds. In Metropolitan Life Ins. Co. v. Henkel, 234 F.2d 69 (4 Cir. 1956), affirming 134 F. Supp. 687 (D.C.N.C. 1955), the court allowed recovery where the insured was fleeing from the police recklessly at *528 speeds in excess of 90 miles per hour. The insured was unable to negotiate a curve at a fork in the road and was killed. The court held that the fork in the road was an unexpected event which made the occurrence accidental. In Rodgers v. Reserve Life Ins. Co., 8 Ill. App.2d 542, 132 N.E.2d 692 (Ill. App. 1956), the insured was driving at a speed of 100 miles per hour despite the protests of his passengers. He was unable to keep his car on the road at a curve. The court found that he was reckless and foolhardy but that he obviously did not intend to kill himself, nor did he expect that he would not be able to negotiate the curve. The court held that the unforeseen event was the car going off the road and crashing. In Scott v. New Empire Ins. Co., 75 N.M. 81, 400 P.2d 953 (Sup. Ct. 1965), the insured failed to negotiate a curve at high speed on a mountain road and was killed. The court allowed recovery as a matter of law. In Union Central Life Ins. Co. v. Cofer, supra, the court held that recovery should be allowed as a matter of law even if the insured was speeding while under the influence of intoxicating liquor. In three of the four cases, Henkel, Rodgers and Cofer, the courts relied heavily on the fact that the policy in question did not contain specific exclusions for voluntary exposure to danger. However, in Applebury v. John Hancock Mutual Life Ins. Co., 379 S.W.2d 867 (Kan. City Ct. App. 1964), the insured was driving at very high speeds through Kansas City, Missouri, while pursued by the police. Decedent struck an oncoming car almost head-on, killing its occupants. A jury verdict for the insurance company was upheld. The court admitted that if it was asked to decide as a matter of law that plaintiff was not entitled to recover, a more difficult case would be presented.
The case at hand is similar to the Henkel case, supra. There the court held that driving the car was the act which preceded the injury and in that act the turning over of the car caused by unexpectedly coming on a fork in the road and running off into the soft shoulder was the "something *529 unforeseen, unexpected and unusual" which caused the injury. 234 F.2d, at p. 71. The court went on to say as follows:
"We do not mean to say that double indemnity is recoverable in every case of voluntary exposure to danger where such an exposure is not an excepted risk in the policy. If it were shown that the insured was killed in the performance of an act so obviously dangerous as normally to result in loss of life, the well-established rule would apply that one is presumed to intend the natural and probable consequences of his act; but under the findings of the District Judge that rule is not applicable in this case."
In the case at hand the jury expressly found that the driver of the car was not killed as a result of driving in a manner so obviously dangerous as would normally result in loss of life. This is the exact language used in Henkel. Although the jury found that the driver should have realized or foreseen that serious injury or death was a "highly probable result of his conduct," as laymen they distinguished between what is a highly probable result and what is a normal result.
The jury's special verdict satisfies the rule of our cases that exposure to great danger will not defeat recovery if in the act which preceded the injury something unforeseen or unexpected occurred. But can we say that coming upon a fork or a curve in a road which cannot be negotiated at 80 miles per hour is an unexpected event? Many highways have curves and changes in grade which would be hazardous at 80 miles per hour. What was unexpected was the driver's inability to negotiate the curve. This is something he did not expect but could have foreseen. However, in my opinion the cases of voluntary exposure to danger allow recovery where the circumstances show that injury to the decedent was not in fact expected, although the risk of injury was foreseeable. However valid the principle for the purposes of criminal law that a man is accountable for the natural and probable consequences of his voluntary acts, see State v. Sikora, 44 N.J. 453 (1965), its application in *530 determining the reasonable expectations of one who purchases insurance protection may be questioned. Here plaintiffs purchased an insurance policy on the life of their son and were his beneficiaries. Can it be said when they were sold this policy by defendant's insurance agent that they did not reasonably expect protection even against the foolish acts of their young son? Robert Schwartz intended to drive at high speeds, but even defendant conceded at trial that he did not actually intend to kill himself and his companion, no matter how foreseeable this result may now appear. For a common understanding of the event it may be noted that at the trial it was natural for witnesses and other participants to call the incident an "automobile accident." Is the law now to say that a man killed in what is commonly known as an "automobile accident" has not been killed accidentally?
I hold that the death of Robert Schwartz was accidental within the normal expectations of the policyholder. His failure to negotiate the curve was an "unexpected, unforeseen and unusual" event which preceded his injury within the prevailing judicial opinion on this subject. Moreover, I disagree with the view that for insurance contract purposes recovery will be barred because a man is held to intend all the probable or foreseeable consequences of his conduct. I believe the normal expectation of a policyholder is that death is accidental when suffered even by one who foolishly and recklessly drives at high speeds if there is some reasonable basis for his belief that his conduct does not make serious injury or death a virtual certainty. This is the sense of the cases, although not their language, unless the test of Henkel, supra ("so obviously dangerous as normally to result in loss of life") is so interpreted. A rule that gives dominance to results which are unexpected although foreseeable, especially with hindsight, violates the basic principles of construction that apply. Absent a policy exclusion for unnecessary, voluntary exposure to danger (see 6 Couch on Insurance, § 1260, p. 4589), the policy here should be construed in favor of recovery.
*531 The policy did contain exclusions for death resulting from "intentionally self-inflicted injury" and "participation in an assault or a felony." I had refused to give the jury defendant's claim that Robert Schwartz was killed as a result of an assault or a felony committed upon his passenger. In the first place, Robert Schwartz was not killed as a result of committing an assault on his passenger. He was killed as a result of speeding, fleeing from the police and failing to keep his car on the road when he encountered a curve. The injury to his passenger was a consequence of this conduct, not a cause of the driver's injuries. Penn Mutual Life Ins. Co. v. Gibson, Colo., 418 P.2d 50 (Sup. Ct. 1966). Moreover, a policyholder would normally expect this exclusion to apply in a case where there is an actual intent to commit a criminal act  not the commission of an act which incidentally and technically may also constitute an assault or other criminal offense. Union Central Life Ins. Co. v. Cofer, supra. I also refused at trial to submit to the jury defendant's contention that Robert Schwartz died as the result of "intentionally self-inflicted injury." This clause does not apply unless actual intent to do self-harm is demonstrated by the evidence. See 6 Couch on Insurance, § 1262 (k), p. 4647.
Accordingly, plaintiff's motion to strike the defenses based upon express exclusions in the policy is granted. On the jury's special verdict judgment is entered in favor of plaintiffs. Since the facts before the court are not in dispute in material respects, plaintiffs' motion for judgment could have been granted as a matter of law.
NOTES
[*] Plaintiffs urge that it cannot be ascertained whether the driver was the insured or his friend Ronald Ferretti who was also in the car when it crashed. In its special verdict the jury found that they could not determine by the preponderance of the evidence which of the boys was the driver. In my opinion the preponderance of the evidence established Robert Schwartz as the driver. It was his car, although registered in the name of his father. He drove the car from home earlier in the evening. Later, around 7 P.M., he was seen driving the car, with Ronald Ferretti as his passenger. When the car crashed it somersaulted and landed upside down with Robert Schwartz pinned under the driver's seat. Ronald was the only other occupant of the car, and he was thrown approximately 16 feet ahead of the car. The convertible top had been torn off, and it is probable that Ronald Ferretti was thrown out because he was in the passenger seat while Robert Schwartz remained in the car because he was at the steering wheel.

Plaintiffs had the burden of proving that their son died an "accidental" death within the meaning of the insurance policy. Kennedy v. United States Fidelity and Guaranty Co., 113 N.J.L. 431, 435 (E. & A. 1934); Mahon v. American Casualty Co. of Reading, 65 N.J. Super. 148 (App. Div. 1961). They sought to do this by arguing that even if it is assumed that reckless driving will bar recovery, the insured was not the driver. To prevail on this theory plaintiffs must establish by the preponderance of the evidence that Robert Schwartz was not the driver. If the jury could not determine from the evidence which boy was the driver plaintiffs failed to carry their burden of proof on this issue. Therefore, for the purpose of this opinion, it is assumed that the insured was the driver.