Agnes OLDRING, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a corporation of the State of New York, Defendant.

Civ. A. No. 79–0938.

United States District Court,
D. New Jersey.

July 8, 1980.

Bailey & Veight by Robert E. Bailey, Vineland, N. J., for plaintiff.

Kraft & Hughes by Bruce S. Edington, Newark, N. J., for defendant.

## OPINION

COHEN, Senior District Judge:

In this contract action, plaintiff seeks recovery of accidental death benefits under an insurance policy issued by the defendant upon the life of her son, Rube Oldring, III. The defendant has refused to pay the benefits on the ground that the insured's death was not an accidental death within the terms and provisions of the policy.

Trial was held without a jury and the Court, having considered the testimony of all witnesses, the exhibits in evidence and the arguments of counsel, finds that coverage under the double indemnity provision of the insured's policy does extend to the circumstances of the insured's death. This opinion is filed in lieu of findings of fact and conclusions of law, pursuant to Fed.R. Civ.P. 52(a).

The facts, essentially undisputed, are as follows: The insured died at the age of twenty-two on August 10, 1978 as a result of a self-inflicted gunshot wound to the head. He had no history of physical or mental illness and, in fact, was consistently described by witnesses as a stable, "happy-go-lucky" young man. He had been married just five and one-half months at the time of his death and there was no evidence suggesting that the couple had any marital or financial difficulties. On the contrary, all evidence indicated that the decedent and his wife were looking forward to a very bright future together. The decedent had

obtained a two-year degree in law enforcement and had been notified, just prior to his death, that he had passed the State Police examination. According to his father's testimony, the decedent was "thrilled" at the results of the examination since his lifelong career goal had been to be a police officer. It is readily apparent that he had everything to live for and was standing on the threshold of life's grand adventures.

With respect to the insured's experience with guns, evidence established that he was both knowledgeable about their use and accustomed to handling them. He had worked part-time for one and one-half years as a special policeman on the Upper Deerfield Township Police Department, and normally carried a weapon with him both on and off duty. Moreover, the decedent had qualified as a sharpshooter during the summer of 1978. And, most relevant to the case at bar, the decedent had a history of playing or teasing with weapons, including pointing pistols believed to be unloaded at his head and pulling the trigger in an effort to frighten other persons.

On August 10, 1978, the day of his death, the decedent and his wife were preparing to leave for a vacation. After having his car checked, he and his wife had lunch and then proceeded to perform some miscellaneous errands. They were preparing to go to the home of the decedent's mother-in-law to borrow luggage for the trip, when the decedent came out of a room off the kitchen with a gun, pointed to his head. The decedent's wife told him to stop playing with the gun, that they had to get going. He then pulled the trigger and the gun clicked. Quickly following that, while his wife's head was turned away, the decedent pulled the trigger again, this time setting the gun off. Upon seeing blood on the floor, the decedent's wife fled to her parents' home and the police were called.

The decedent was taken to the hospital where he died the same day of a head wound. An investigation revealed that the decedent had shot himself with a .38 snub nose revolver. The weapon was found next to his body with one empty shell in the chamber. Four other full shells were found on the decedent's dresser. Expert testimony disclosed that the shell casing found in the gun had been used before, causing it to stick inside the chamber.

■ The defendant insurance company conceded at trial that the insured's death was not the result of a suicide attempt. We agree and conclude that at the time of the gun's firing, the deceased had no intention of taking his own life and, instead fired the weapon with the mistaken belief that it was unloaded.

The decedent was insured under a policy issued by the defendant, Metropolitan Life Insurance Company. The single indemnity life insurance benefits under the policy have already been paid to the beneficiary, Agnes Oldring, the plaintiff in this action, and there is no dispute concerning those benefits. There is a controversy, however, concerning plaintiff's entitlement to benefits under the double indemnity provision of the policy which provides for an accidental death benefit on proof that "the death of the insured occurred, . . . as the result, directly and independently of all other causes, of bodily injury caused solely by external, violent, and *accidental means.*" (emphasis added.)

The main thrust of defendant's argument, here, is that a death, even if unintentional, which results from the voluntary act of placing a gun to one's head and pulling the trigger, is not a death caused "solely by accidental means." Instead, the defendant contends such a death is a "natural and probable consequence" of the actor's conduct; further, that recovery is barred by the insured's assumption of risk and by a specific policy exclusion for death which results from "committing an assault."

A number of New Jersey cases have dealt with the interpretation of insurance policies containing "accidental means" provisions. And though our research, and that of counsel, does not disclose any New Jersey case which resembles the factual situation here, certain rules of general applicability have emerged from the courts' opinions.

At the outset, we should note that New Jersey makes a distinction between insurance policies which insure against accidental death, and a death caused by accidental means. *See Perrine v. Prudential Insurance Company of America*, 56 N.J. 120, 124, 265 A.2d 521 (1970) (refusing to follow the approach of the Cardozo dissent in *Landress v. Phoenix Mutual Life Insurance Co.*, 291 U.S. 491, 498, 54 S.Ct. 461, 463, 78 L.Ed. 934 (1934) that "an accidental result almost automatically imports that the means were accidental"). Specifically, the courts hold that coverage in policies which insure against death from accidental means is intended only where the injury is the result of some unforeseen or unexpected event:

"[I]f a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but . . . if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means."

*Linden Motor Freight Co., Inc. v. Travelers Insurance Co.*, 40 N.J. 511, 515, 193 A.2d 217, 219 (1963) (quoting *United States Mutual Accident Ass'n v. Barry*, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60 (1889)).

In addition to the element of unforeseeability, this Court must also consider "the reasonable expectations of the average policy holder." *Perrine*, 56 N.J. at 125, 265 A.2d at 524; *Harris v. John Hancock Mutual Life Insurance Co.*, 41 N.J. 565, 568, 197 A.2d 863 (1964); *Linden*, 40 N.J. at 525, 193 A.2d 217; *Schwartz v. John Hancock Mutual Life Insurance Co.*, 96 N.J.Super. 520, 525, 233 A.2d 416 (Law Div.1967), *aff'd*, 99 N.J.Super. 223, 239 A.2d 248 (App.Div.), *cert. denied*, 51 N.J. 393 (1968). In *Linden*, the insured suffered a fatal heart attack after lifting cartons in the performance of his regular duties. The beneficiary sought to recover double indemnity benefits under a provision of the policy conditioning payment upon the sustainment of bodily injuries effected through "external, violent and accidental means." In concluding that this policy provision did not provide coverage for the insured's injury, the court noted:

In ascribing a reasonable interpretation to the terms of the policy here involved, it is, to us, beyond question that "means" has reference to "cause," and that the double indemnity benefits of this policy should be available only where there is something accidental, in the common and popular sense, in the cause of the resulting injury, i. e., in the events preceding and leading up to it. The insurer has specified, and we think the average policyholder would fairly appreciate, that the insurance is not against every death which might be thought accidental because unforeseen, unexpected or unusual in the circumstances, but only covers those situations where there was something of like quality which happened during the preceding events and brought about or contributed to the result.

40 N.J. at 526, 193 A.2d at 225.

The same rationale was applied in *Harris v. John Hancock Mutual Life Insurance Co.*, where, as in *Linden*, the court denied benefits for a death precipitated by the insured's exertion on the job. In reaching its decision, the court set forth the applicable test in cases arising under accidental means provisions:

Whether the preceding events—the means or cause of the bodily injury resulting—are accidental will be determined by the reasonable appreciation, understanding and expectation of the average policy purchaser in the light of and having in mind the limiting language of the insuring clause. This is a question of fact unless the average policyholder could not reasonably reach a conclusion of coverage in the particular circumstances.

41 N.J. at 568, 197 A.2d at 864.

As directed by the *Linden* and *Harris* courts, the issue to be determined here is whether the average holder of an accidental means-type policy would find that there was something about the circumstances preceding and leading up to the insured's death

which could be considered unforeseeable, unexpected or accidental in the common sense of those terms. While the conduct of the deceased might be characterized as foolish, reckless or even stupid, we believe that the average policyholder would find that there was something in the context of the circumstances presented here which could be considered unforeseeable. Certainly, the decedent's failure to completely empty the weapon of shells before "playing" with it, i. e., the presence of a shell which was stuck in the gun's chamber, was an unexpected occurrence. The end result of death would not have occurred but for the mistaken condition of the gun. *Cf. Harrington v. New York Life Insurance Co.*, 193 F.Supp. 675 (N.D.Cal.1961), *aff'd*, 299 F.2d 803 (9th Cir. 1962) (held that death of the insured which occurred when he pointed a gun, which he thought was protected by the safety mechanism, at himself and pulled the trigger, was a death from accidental bodily injury within double indemnity provisions).

■ The insurance company here insists that since the insured's death resulted from the voluntary act of pulling the trigger of a loaded gun that it was not a death effected "solely" through "accidental means." However, courts interpreting accidental means provisions have allowed recovery for conduct entirely voluntary and intentional "if, in the act which precedes the injury, something unforeseen, unexpected or unusual occurs which produces the injury." *Linden*, 40 N.J. at 515, 193 A.2d at 219; *see Perrine v. Prudential Insurance Co. of America*, 56 N.J. 120, 265 A.2d 521 (1970). Moreover, the courts have recognized that negligent creation of risks to one's own safety will not prevent the result from being characterized as "accidental." For example, in *Schwartz v. John Hancock Mutual Life Insurance Co.*, *supra*, the court held that the insured's death, which occurred in a high speed chase by the police when he failed to negotiate a steep curve, was, under the circumstances, "accidental" within the policy even though the risk of injury was foreseeable. In concluding that the insured's failure to negotiate the curve was an unexpected event preceding his death, the court observed:

A rule that gives dominance to results which are unexpected although foreseeable, especially with hindsight, violates the basic principles of construction that apply. Absent a policy exclusion for unnecessary, voluntary exposure to danger (see 6 *Couch on Insurance*, § 1260, *p.* 4589), the policy here should be construed in favor of recovery.

96 N.J.Super. at 530, 233 A.2d at 422.

■ The defendant has raised two secondary arguments, which merit only brief attention. The first is that recovery is barred by the insured's assumption of risk. This argument was not supported by the defendant with any case law and, after reviewing the relevant authority, the Court finds that defendant's position is totally untenable since it is well settled that a person will not be held to have assumed a risk where the danger is unknown. *See Hendrikson v. Koppers Co.*, 11 N.J. 600, 95 A.2d 710 (1953). Here the decedent, an experienced gun handler, had no apprehension of danger since he believed the gun to be unloaded. And moreover, even if the assumption of risk doctrine could, under some interpretation, serve to bar the recovery of insurance benefits, there is no policy exclusion in the contract at issue here which provides for such an exclusion. In view of this fact and the rule that ambiguities and uncertainties in an insurance contract are to be resolved against the insurance company, *Linden*, 40 N.J. at 525, 193 A.2d 217, we must reject defendant's assumption of risk argument. The defendant's second contention is that recovery is barred by a specific policy exclusion for death which results from "committing an assault." The defendant claims the insured committed an assault when he shot himself. Again, we find the provision to be totally inapplicable to the factual circumstances presented here. A review of the case law reveals that an assault provision, like the one at issue, has only been invoked to bar recovery in cases "where the insured was the aggressor in an assault, or was claimed to have been guilty of other wrongful conduct, in the course of which he was killed by the person he had

assaulted or by a third party." *Linden*, 40 N.J. at 536, 193 A.2d at 231; *see, e. g., McNamara v. Metropolitan Life Insurance Co.*, 134 N.J.L. 231, 46 A.2d 798 (E. & A. 1946); *White v. Metropolitan Life Insurance Co.*, 118 N.J.L. 149, 191 A. 770 (E. & A. 1937); *Walters v. Prudential Insurance Co.*, 116 N.J.L. 304, 183 A. 897 (E. & A. 1935); *see generally R. Keeton, Insurance Law* § 5.4(f), at 305 (West 1971). Additionally, the average policyholder would expect this exclusion only to apply in a case where there is an actual intent to commit a criminal act. *Schwartz*, 96 N.J.Super. at 531, 233 A.2d 416. Here, even the defendant has conceded in his Proposed Findings of Fact and Conclusions of Law that there is no evidence of such an intent on the insured's part.

In summary, from our examination of the authorities, we conclude that the death of the insured in the manner related was effected solely through accidental means and is therefore a compensable loss within the double indemnity provision of the policy. Accordingly, judgment is granted in favor of the plaintiff.

An appropriate form of judgment may be submitted by counsel for the plaintiff.