GODFREY M. HAZUKA AND HELEN HAZUKA, DOING BUSINESS AS HAZUKA'S FRIENDLY CORNER, APPELLEES AND CROSS-APPELLANTS, V. MARYLAND CASUALTY COMPANY, A CORPORATION, APPELLANT AND CROSS-APPELLEE.

160 N. W. 2d 174

Filed June 28, 1968. No. 36837.

Herbert E. Story, for appellant.

Martin A. Cannon and Matthews, Kelley & Cannon, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action to recover a loss alleged to have occurred under the provisions of a safe burglary policy of insurance. The jury returned a verdict for the plaintiffs for $2,000, the maximum liability assumed by the insurer. The defendant has appealed.

The plaintiffs were the owners and operators of a tavern in Omaha known as Hazuka's Friendly Corner. During the early morning of August 11, 1964, the plaintiff, Godfrey Hazuka, testified that he closed the tavern, placed money in excess of $2,000 in a safe in his basement, threw the bolt to a closed position, and turned the combination on the door of the safe to lock it. The next morning, a hole was found in one of the brick walls of the building large enough for a man to enter. The door of the safe was open, a metal inside door had been pried open, and a large screw driver was found on the floor near the safe.

The safe was described as real heavy and about 2 feet in width on each side. The steel safe was incased in concrete which had been painted a dark color. The front of the steel safe was a round steel door about 6 inches in diameter. In the center was a combination lock common to safes of this kind. A heavy lever or handle protruded from the steel door which was used for the purpose of throwing the bolt in opening and closing the safe. Inside the heavy door of the safe was a second metal door that required two keys to open which were kept hidden in the tavern for use by the person closing up at night and opening the tavern in the morning.

Godfrey Hazuka testified there were some white marks on the concrete around the safe before the rob-

bery and more of them the morning after the robbery. There were no marks or fingerprints on the front of the steel safe, the combination lock was intact, the door was not sprung but the lever could not be pushed down to throw the bolt. The lock was broken on the outside basement door and on an upstairs door. Two policemen and a safe and time lock expert testified that they saw no marks or other evidence of force used in opening the outside door of the steel safe.

The defendant contends that the evidence will not sustain a finding of liability on its part under the terms of the policy. The policy provision provides: " 'Safe Burglary' means (1) the felonious abstraction of insured property from within a vault or safe described in the declarations and located within the premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of (a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors, or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made, if not made through such doors, or (2) the felonious abstraction of such safe from within the premises."

It will be noted that the language of the policy carefully limits the liability of the insurer to losses sustained through forcible or violent entry into the safe by the use of actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity, or chemicals upon the exterior doors of the safe if entry is made through such doors. The liability is further limited to those cases where all the doors of the safe were closed and locked by all combination locks thereon. It impliedly excludes burglary

or theft by anyone who knew the, combination to the safe and entered the safe by the use of it alone whether he be someone connected with the business of the insured and legitimately in possession of the combination or a stranger who acquired it surreptitiously. The risk assumed was not against burglary or robbery in whatever manner accomplished. The tools, explosives, electricity, and chemicals referred to are, those such as are employed by burglars in forcing an entrance into a safe. This is a limited liability policy and, to recover under it, the plaintiff must establish that his loss was suffered in the manner insured against. See Komroff v. Maryland Casualty Co., 105 Conn. 402, 135 A. 388, 54 A. L. R. 463.

The liability in the instant case is for all loss by burglary from a safe by a person who shall have made entry to it by the use of tools, explosives, electricity, or chemicals when the doors were previously closed and locked and when visible evidence on the safe shows that it was entered by force and violence. The policy does not protect against the, burglary of a safe by the use of a key or combination whether or not legitimately obtained. The insurance is, in effect, a guaranty of the sufficiency of the safe against the tools, explosives, electricity, and chemicals of burglars. In other words, the visible marks on the outside of the safe must be such as would indicate that entry to the safe, was made by actual force and violence.

In Swanson, Inc. v. Central Surety & Ins. Corp., 343 Mo. 350, 121 S. W. 2d 783, the court, in dealing with a similar provision in an insurance policy, said, as summarized in the first section of the syllabus: "In a policy indemnifying insured for loss by burglary * * * by any person or persons making feloniously entry into the premises by actual force and violence when such premises are not open for business, 'of which force and violence there shall be visible marks made upon such premises at the place of such entry by tools,' etc., that visible

*marks* requirement was intended to be a limitation on liability and not an attempt to determine the character of evidence to show liability. * * * Such provision is not ambiguous and there is no room for the rule that insurance contracts will be construed most favorably to the insured." See, also, 10 Couch on Insurance (2d Ed.), § 42:129, p. 762.

In Prothro v. Commercial Cas. Ins. Co., 200 S. C. 432, 21 S. E. 2d 1, the court, in a similar case, said: "The policy properly interpreted must be held to mean that if actual force and violence is used in connection with the opening of a safe, then even though the safe was not opened by such actual force and violence alone, the policy provision applies, provided the actual force and violence were contributing factors to the opening of the safe, and without which the safe could not have been opened."

It is not every burglary which constitutes a basis for liability, but a burglary as defined in the contract of insurance. The language of the contract is not unclear or ambiguous and consequently does not require construction. It is therefore to be given effect in accordance with the ordinary and generally accepted meaning of its words. It is not a policy which insures against mysterious disappearance, nor does it cover manual operation of the safe's combination in the absence of visible evidence of the use of force thereon. It establishes liability under the insuring clause of the contract only for loss of property extracted from a safe which has been duly locked by use of a combination or time lock, has been entered by force and violence, and as a result of the force and violence there is visible evidence upon the exterior doors or outer walls of the safe of that force and violence which either effected the entry or contributed to effecting the entry. Markings or scratches showing force and violence within the safe are not included within the terms of the insuring clause of the policy, but only those which appear upon the exterior.

Inglis v. General Casualty Co., 211 Or. 116, 316 P. 2d 546. See, also, 10 Couch on Insurance (2d Ed.), §§ 42:130 and 42:131, pp. 762 and 763. In a case very similar on its facts, this court denied a recovery as a matter of law where it was shown that the marks on the safe did not contribute to the forcible entry of the safe. Grayson v. Maryland Casualty Co., 100 Neb. 354, 160 N. W. 85.

In the instant case, the only visible marks on the exterior of the safe were some white marks on the concrete which encased the safe. As near as can be determined from the record, they were the result of ordinary chipping or wearing through the paint which had been applied to the concrete. They did not contribute to the means of entry to the safe, and there is no evidence that they did. Two policemen, who examined the exterior of the safe, found no marks indicating a forcible entry to the safe. A safe and time lock expert testified that he found no exterior markings indicating a forcible entry to the safe. The combination lock was neither marked nor damaged. It is true that the inner doors of the safe were pried open and the bolt or bolts locking the safe were bent and had to be repaired, but they were a part of the internal operation of the safe and do not come within the insuring clause of the policy. As we have stated, the policy is one of limited liability. It does not protect against entry to the safe by one who knew the combination to the safe however obtained. It did not, for obvious reasons, protect against "inside" jobs or carelessness in permitting the combination to the safe to become known to others. Past experience has been such that the insurers will not assume such risks. As we said in Grayson v. Maryland Casualty Co., *supra*, the evidence is unsatisfactory and it does not sustain the verdict under the terms of the policy.

The trial court erred in failing to sustain the defendant's motion for a directed verdict at the close of the evidence. The judgment of the district court is reversed

.and the cause remanded with directions to sustain defendant's motion for a directed verdict and to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.