HANNAH D. PERRINE, PLAINTIFF-APPELLANT, v. THE
PRUDENTIAL INSURANCE COMPANY OF AMERICA,
DEFENDANT-RESPONDENT.

Argued February 16, 1970—Decided May 18, 1970.

*Mr. Charles J. Casale, Jr.* argued the cause for plaintiff-appellant (*Messrs Pellettieri* and *Rabstein,* attorneys; *Mr. Casale* on the brief).

*Mr. Richard M. Kohn* argued the cause for defendant-respondent (*Messrs. Katzenbach, Gildea & Rudner,* attorneys; *Mr. Kohn* on the brief).

The opinion of the Court was delivered by

HALL, J. The plaintiff, beneficiary under two life insurance policies issued by defendant on the life of her husband, sued

for the double indemnity benefit provided by those contracts in case the death of the insured occurred "as a result, directly and independently of all other causes, of bodily injuries. effected solely through external, violent and accidental means." The trial judge, sitting with a jury, granted a judgment of involuntary dismissal at the end of plaintiff's case on the basis that our decisions in *Linden Motor Freight Co. v. Travelers Ins. Co.*, 40 *N. J.* 511 (1963), and *Harris v. John Hancock Mut. Life Ins. Co.*, 41 *N. J.* 565 (1964), dictated that result. The Appellate Division affirmed for the same reason in an unreported *per curiam* opinion. We granted plaintiff's petition for certification. 54 *N. J.* 519 (1969).

In *Linden* and *Harris* the deaths were the result of heart attacks following physical exertion, which was held not to constitute "accidental means." Here death was caused by peritonitis following a break in the large intestine which, according to plaintiff's proofs, came about from the pressure of a heavy piece of equipment against the decedent's abdomen.

The details of those proofs disclose the following course of events. Plaintiff was a truck driver. On September 11, 1964, a Friday, he and a helper were directed to remove a bulky cabinet-type piece of telephone equipment, about six feet high and weighing 600 to 700 pounds, from the basement of a bank in Princeton and to deliver a new, similar piece of equipment to the same location. The removal of the old equipment was accomplished first. It had no handles and had to be moved by being strapped upright to a hand truck. The means of access to street level was a rather narrow stairway, which had a turn and landing in it. According to the testimony of the helper, the old equipment was moved up the stairs on the hand truck step by step, with the helper pulling and the decedent, the larger and stronger of the two men, pushing from behind. It is a reasonable inference that decedent braced the load with his body during the operation. Nothing untoward occurred, in the sense that neither man slipped, fell or lost his grip. The decedent

made no complaint, although half way up the stairs they stopped to rest a couple of minutes at his request. The load was wheeled from the top of the stairs to the street. There it was tipped against the decedent's body so that the helper could replace the hand truck with a four wheel, flat dolly, upon which it was moved to the vehicle, where it was lifted and placed inside by an attached hydraulic lift. The new equipment was then delivered to the basement location. This time both men stood to the rear of the hand truck and lowered it a step at a time. Again nothing out of the ordinary occurred and decedent made no complaint. The whole operation took three to four hours. The men then returned to the trucking company terminal, completing the day's work.

At home that evening and the next day decedent appeared unwell and lacked appetite. His only explanation to his sons was that he had had a "terrible day." His wife was engaged elsewhere on a baby-sitting job and on Saturday he told her over the telephone that "something happened at work yesterday", but declined to elaborate. Sunday he felt worse, his wife suggested he go to a doctor and he was admitted to the hospital that evening. Surgery was later undertaken which disclosed waste matter in the pelvic cavity. According to the testimony of the surgeon, this was proved "to come from a perforation of his large bowel." He died several days thereafter from inflammation of the abdominal cavity.

During the decedent's stay in the hospital both his wife and the surgeon inquired about the onset of his condition. He told her that he began to feel sick and felt a sharp pain in his abdomen while he was moving heavy freight on Friday, September 11. He told the surgeon, who recorded the statement in the hospital record, that "he had been doing heavy work and lifting heavy objects and he had to get them against his abdomen. His pain first came shortly after this." He apparently did not indicate at what point in the work process this occurred. The surgeon gave his opinion that

the intestinal rupture was due to the very heavy work and the great pressure put against the abdominal wall. The defendant concedes that causal connection between the work and the death was thereby sufficiently established for purposes of plaintiff's case.

The issue in the case is whether plaintiff has shown enough, in the light of *Linden* and *Harris,* to make out a fact question for the jury, upon which it could reasonably find that the bodily injury of a ruptured intestine resulting in death was "effected * * * through * * * accidental means." No other question has been raised. This issue appears to have been somewhat misunderstood at the trial level. Both counsel and the trial judge seemed of the view that the question of "accidental means" is always one of law for the court. While we specifically so held on the facts in *Harris* (41 *N. J.* at 568), and inferentially in *Linden,* such is not true in every case. Indeed, *Harris* states that the issue is generally one of fact. Perhaps the misapprehension here came about because both *Linden* and *Harris* were tried to the court without a jury and arose on appellate review on the judge's findings and conclusions on the whole case.

The attempt in *Linden,* and as summarized in *Harris,* was to reach a definitive approach for this state to the interpretation and application of the long troublesome "accidental means" provision in insurance contracts. We there pointed out that the phrase had reference to the character of the events preceding and leading up to the accidental (unexpected or unforeseen) result and not merely to the character of the result — that a contract so providing did not insure against accidental bodily injuries, but covered only if that result was brought about by something accidental in the events preceding and leading up to it. So we felt unable to follow the approach of the Cardozo dissent in *Landress v. Phoenix Mut. Life Ins. Co.,* 291 *U. S.* 491, 498, 54 *S. Ct.* 461, 464, 78 *L. Ed.* 934, 937 (1934) that an accidental result almost automatically imports that the means were accidental. In our view, that would amount to a com-

plete disregard of specific language in the policy importing an obviously intended lesser coverage.

The other widely used approach discussed in *Linden,* which we felt New Jersey had previously purported to follow, was that derived from *United States Mut. Accident Ass'n v. Barry,* 131 *U. S.* 100, 9 *S. Ct.* 755, 33 *L. Ed.* 60 (1889). That theory was directed solely to the acts or events preceding the injury, requiring very literally that something unforeseen, unexpected or unusual occur in the acts or events preceding or producing the injury. What was implied in *Linden* was that the literal application of this approach, without more, to the myriad of factual situations which arise, had resulted, on the one hand, in dubious hairsplitting and stretching in many cases to reach what appeared to the court to be a fair and just result in favor of the insured, and on the other, in numerous instances of too rigid application resulting in seeming unjust conclusions of non-liability, as well as inconsistent results between jurisdictions and even within the same jurisdiction.[1]

What we strove to do in *Linden* was to fashion another approach which we believed was not only fairer to the insured in a contract of adhesion, but would also lead to more consistent and predictable results in this state. We laid down the test of the reasonable expectations of the average policyholder, which we suggested was what many courts here and elsewhere were already applying without saying so.

---

[1] It may be noted in passing that the Cardozo thesis of equating accidental means with accidental results is not a panacea automatically solving all cases. See *e. g.* the difficulties presented in *Schwartz v. John Hancock Mut. Life Ins. Co.,* 96 *N. J. Super.* 520 (Law Div. 1967), *aff'd,* 99 *N. J. Super.* 223 (App. Div.), *certif. denied* 51 *N. J.* 393 (1968). There the life insurance policy granted additional benefits where "death resulted solely from accidental bodily injury", without any reference to accidental means. Note the court's comment about the Cardozo test at 96 *N. J. Super.* 526–527. It would seem that that test merely transfers the question as to unexpectedness from the character of the events preceding the resultant injury the character of the injury itself, which can be just as difficult, as the cited case illustrates.

We indicated initially that the average policyholder would fairly appreciate that, in view of the restrictive language used, "the insurance is not against every death which might be thought accidental because unforeseen, unexpected or unusual in the circumstances * * *." (40 *N. J.* at 526). And then we directed that the average policyholder inquiry be as to the events preceding and leading up to the result under the thesis summarized in *Harris*: "Whether the preceding events — the means or cause of the bodily injury resulting — are accidental will be determined by the reasonable appreciation, understanding and expectation of the average policy purchaser in the light of and having in mind the limiting language of the insuring clause. This is a question of fact unless the average policyholder could not reasonably reach a conclusion of coverage in the particular circumstances." (41 *N. J.* at 568). In those cases we concluded (with which the plaintiff in this case thoroughly agrees) that, where the resultant injury is a heart attack brought on by reason of exertion, no average policyholder could reasonably consider anything in the preceding events "accidental." Therefore we held the question became one of law and no recovery could be had.

We were not there concerned with refining or more sharply articulating the approach for application in a different factual complex where the whole episode could be thought to bespeak more of an "accident" in the common and popular sense and thus raise a question of fact. To refine the test for such situations, we say that the issue for the fact-finder to determine is whether the average policyholder would consider that there was something about the preceding acts and events, in the light of the unexpected injurious result and at the same time having in mind the limiting language of the insuring clause, which would lead him reasonably to call the means "accidental," even though, strictly speaking, nothing unexpected or unforeseen occurred in the course of the preceding acts.

The theory of reasonable expectations of the average policy-holder in a dispute over coverage was not new in *Linden*. It probably had its most articulate origin in the leading case of *Kievit v. Loyal Protective Life Ins. Co.*, 34 *N. J.* 475 (1961), quoted in *Linden* (40 *N. J.* at 525). There it was applied with respect to coverage under an accident insurance policy which did not contain any accidental means requirement. The theory has since been consistently applied by this court in a variety of insurance coverage situations. See, *e. g., Allen v. Metropolitan Life Ins. Co.*, 44 *N. J.* 294, 305–306 (1965); *Gerhardt v. Continental Ins. Cos.*, 48 *N. J.* 291, 297 (1966). And very recently Professor Keeton, in his penetrating article, "Insurance Law Rights At Variance With Policy Provisions," 83 *Harv. L. Rev.* 961 (1970) advocates the following principle:

"The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." (at 967).

While we have no illusions that this approach to coverage questions will solve all cases with complete consistency, we nonetheless believe that it will produce results both fairer to all concerned and more uniform than either the loose Cardozo or the strict *Barry* thesis. If adopted universally, it would do much to correct the incongruous situation presently existing where the liability of an insurer, using the same accidental means provision in its policies in every state, will vary from state to state, and even from case to case, despite the fact that presumably the same premium is charged for the coverage everywhere.

Turning to the particular case before us in the light of the observations we have made, we think plaintiff did show enough on her case to withstand a motion for involuntary dismissal. The course of events preceding the rupture of the intestine was quite different from those leading to the heart attacks in *Linden* and *Harris*. Here we have a

traumatic incident — the weight and force of heavy equipment applied directly to the decedent's abdomen, which caused the perforation of the bowel — whether his intestine was weaker in some part than another individual's might be is of no consequence. It is not a case of a rupture resulting from mere strain or exertion. The result is of a kind which the average policyholder could reasonably say was caused by something "accidental" in the preceding course of events in the light of his reasonable expectation of coverage, even having in mind the limiting language of the policy. So a jury could find, under the proofs at this juncture of the case and appropriate instructions covering the approach previously set forth, that the death-resulting bodily injury was effected through "accidental means." Of course, a jury would not be compelled to so find, since the proofs are not strong enough for a court to conclude that twelve reasonable jurymen could not rationally say that the injury was not caused by "accidental means." It was therefore error for the trial court to have entered a judgment of involuntary dismissal at the end of plaintiff's case and for the Appellate Division to have affirmed it.

The judgment of the Appellate Division is reversed and the case is remanded to the trial court for a new trial. Costs will abide the event.

HANEMAN, J. (dissenting). As I understand the test in the majority opinion it is different from the Cardozo test which is that an accidental result almost automatically imports that the means were accidental. The *Linden-Harris* test is reaffirmed with the appendage of the provision that the facts of the accidental (unexpected and unforeseen) result must be employed as a backdrop for the events which precede the injury, and must be considered together with such antecedent facts in determining whether the injury was caused by accidental means. The basic test of "accidental means", however, remains the necessity for the occurrence of something unforeseen, unexpected or unusual in the acts

or events preceding the injury. Ordinarily this would make the solution of that query a jury question. However, there will of necessity arise cases where the "average policyholder" could not reasonably reach a conclusion of coverage, in which event the question is one of law. If this is the conclusion of the majority, I am in accord. I can think of no fairer approach to the solution of a problem which involves such a morass of possible factual complexes. Even a casual projection of a few hypothetical cases demonstrates the near impossibility of articulating an equally fair standard.

Here, however, I see nothing that would warrant the average policyholder in reasonably concluding that the injury was caused by accidental means. The deceased, deliberately and intentionally tilted the cabinet to rest upon his abdomen. As far as appears, the cabinet was eased to that position — exactly as deceased intended, without any slipping or sharp contact. There were no cuts, bruises or other evidence of a trauma on the skin surface. The traumatic incident referred to was the rupture of the bowel, *i. e.,* the result of plaintiff's voluntary act. Accordingly, even though a jury viewed the events which preceded the injury in the light of the result, as above suggested, they could not reasonably conclude that the injury was caused by accidental means.

I would affirm.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and HALL—5.

*For affirmance* — Justice HANEMAN—1.