NILE VALLEY COOPERATIVE GRAIN AND MILLING COMPANY, APPELLEE, v. FARMERS ELEVATOR MUTUAL INSURANCE COMPANY, APPELLANT.
193 N. W. 2d 752

Filed January 28, 1972. No. 37940.

William B. Craig, for appellant.

Robert M. Harris, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

PER CURIAM.

A fire destroyed plaintiff's "Taylor" building and contents which included fixtures temporarily removed from plaintiff's "Butler" building 40 feet away. Heat from the fire warped sides and the top of the Butler building. Plaintiff sued on two policies of fire insurance: (1) A standard policy which allegedly covered not only the Butler building but the fixtures also; and (2) a provisional policy relating to loss of personal property in the Taylor building.

After a trial to the court judgment went for plaintiff on each claim. Defendant appeals. It assigns for error (1) the allowance of damages for the fixtures under the standard policy; and (2) the amount of the award under the provisional policy which the court, according to defendant, erroneously interpreted.

In late June 1968 plaintiff began its annual cleaning of the Butler building preparatory to receipt of grain for storage. The work which lasted several weeks included (1) removal of partitions in the form of steel I-beams, and sliding panels that together formed walls for storage; (2) sweeping; (3) application of an exterminative spray; and (4) sealing of the building. Plaintiff stored the partitions and panels in the Taylor building to prevent exposure to moisture with consequent rust during the interval. The fire happened July 12.

The standard policy covered the Butler building "while located or contained as described in this policy," an

endorsement defining "building" to include bins. The endorsement permitted alterations, improvements, repairs, and "such use of the premises as is usual and incidental in the business conducted therein and all articles and materials usual and incidental to said business . . .."

Objectively reasonable expectations of a beneficiary-insured regarding terms of his insurance contract ordinarily will be honored. See, Funke Estate v. Law Union & Crown Ins. Co., 97 Neb. 412, 150 N. W. 262 (1914); Keeton, "Insurance Law Rights at Variance with Policy Provisions," 83 Harv. L. Rev. 961 at 967 (1970); cf. § 44-101, R. R. S. 1943. Expanding operation of the rule, we apply it to questions of coverage. The circumstances of this case relieve us of the burden of spelling out limitations. Defendant does not argue that temporary removal of the fixtures increased its risk. See generally Keeton,"Insurance Law Rights at Variance with Policy Provisions: Part Two," 83 Harv. L. Rev. 1281 (1970). The removal and the cleaning were normal business practices. The provisions of defendant's endorsement were liberal. Defendant incurred liability for loss of the fixtures.

The provisional policy contained a "full reporting" or "honesty" clause. Weeding out prolix and irrelevant provisions governing underreporting, overreporting, delinquent reporting, coinsurance and their consequences, we quote the policy: "Insurance is provided . . . for . . . coverages indicated below . . .. Amount $18,000 . . .. On Provisional Stock . . . (in Taylor building) Subject to . . . Form . . . 455 (11-63) . . . this Company . . . to an amount not exceeding the amount(s) above specified, has insured . . . (plaintiff) to the extent of the actual cash value of the property at the time of loss . . . against all DIRECT LOSS BY FIRE . . . (Form 455) (11-63) STANDARD PROVISIONAL STOCK FORM for . . . Warehouse Risks . . .. 1. On stock consisting of grain . . . seeds . . . and all other merchandise and supplies . . .. 2. . . . . the amount of insurance . . . at any

time . . . shall be determined by . . . Paragraph 5. . . . 3. The insured . . . agrees to file with the insurer . . . a true statement . . . of the value (as defined in Paragraph 4) of the stock covered . . . as of the close of business on each Saturday . . .; and, if the insured so elect, such an amount or addition thereto as the insured shall estimate as sufficient to cover errors or omissions in ascertaining such value . . .. 4. . . . wherever the term "Stock" is used . . . it shall . . . include all property covered . . . as described in Paragraph 1 . . .. 'Value' . . . shall apply in the manner set forth in . . . (4a) . . . at the time when such ascertainment of value is required by the conditions of this policy: (4a) The value of stock . . . shall be the cost of replacing such stock . . .. 5. The amount of Insurance . . . at any time . . . shall be determined by following the formula set out in . . . 5A . . . and 5E. Section 5A. As of the time at which insurance in force is to be determined, ascertain the value as defined in Paragraph 4 . . .. Section 5E. 1. If the amount determined by . . . 5A . . . is less than the 'Limit . . .' named in the 'Schedule Endorsement' . . ., the amount thus determined shall be the 'Amount of Insurance under this form.' . . . SUPPLEMENTAL COVERAGES . . . Debris Removal: . . . this insurance covers expenses incurred in the removal of all debris . . .. However, the total liability under this policy shall not exceed the amount of insurance in force under this policy at the time of loss . . .."

Plaintiff's last report, dated July 6, 1968, and timely, valued the stock at $6,500, or 100 per cent of actual value. It listed, however, only flour and feed at $6,000 and seed at $500. Plaintiff omitted to value other stock in a space on the form, overvaluing flour, feed, and seed. Loss of the listed items in the fire amounted to $4,416.50, and of other merchandise and supplies $2,866.11, or a total loss of $7,282.61. The cost of removing debris was $200. Plaintiff claimed a loss of $6,700 including the $200 item which the court allowed.

Defendant argues that plaintiff, in not itemizing its stock, underreported so as to limit its recovery to $4,416.50, the loss of reported items.

Insurers in many instances require such reports only to ascertain value. "The premium cost must be measured in relation to the . . . value which actually falls within the protection of the policy at various times during its term. Hence, it is essential that the actual amount of premium be determined at the end of the policy year instead of at the beginning, and some way must be devised to determine retroactively how much value had been insured . . .. Practicality dictates that the value of stock be determined at convenient intervals but with sufficient frequency . . . to provide a fairly accurate reflection of the over-all amount of exposure to which the coverage had been subjected." Cotton, "Metered Fire Insurance—A Survey of the Reporting Form Fire Policy," 1958 Ins. L. J. 217 (1958).

In defendant's policy time frames concerning stock reports and losses are ambiguous. The applicable part of the policy is interpreted as follows: Liability is limited to that proportion of any loss which the last reported value bears to the actual value at the time of the report, provided liability does not exceed the amount stated in the schedule endorsement of the policy. Plaintiff having reported 100 per cent of the value in its latest and timely report, defendant incurred a liability of $6,700. The judgment was correct. See, American Eagle Fire Ins. Co. v. Burdine, 200 F. 2d 26 (10th Cir., 1952) (Murrah, J.); Hanover Insurance Co. v. McLoney, 205 F. Supp. 49 (D. C., E. D. Ky., 1962); but cf. Columbia Fire Ins. Co. v. Boykin & Tayloe, Inc., 185 F. 2d 771 (4th Cir., 1950); Aetna Ins Co. v. Rhodes, 170 F. 2d 111 (10th Cir., 1948).

Other assignments of error are not well taken. The judgment is affirmed. For services of counsel in this court we allow plaintiff $500. See § 44-359, R. S. Supp., 1971.

AFFIRMED.

NEWTON, J., dissenting in part.

The majority opinion holds that plaintiff may recover the value of certain fixtures temporarily removed from the Butler building and stored in the Taylor building. These fixtures consisted of I-beams and sliding panels which were normally affixed to and formed part of the Butler building. Also included in this category is an aeration fan used as a blower to aerate grain stored in the building and normally affixed to the Butler building as a part of it. These fixtures were not removed from the Butler building for the purpose of making "alterations, improvements, and repairs to any building" as authorized by the policy which extended coverage under such conditions. They were removed solely to facilitate cleaning of the building.

Each of the two buildings was separately covered in the same policy. The fixtures mentioned were integral parts of the Butler building and insured as such. Had they remained in the Butler building, they would not have been damaged. The policy is not ambiguous and clearly does not extend coverage to fixtures removed from the building for cleaning purposes.

It is intimated that the following clause—"Permission granted for such use of the premises as is usual and incidental in the business as conducted therein and to keep and use all articles and materials usual and incidental to said business, in such quantities as the exigencies of the business require, * * *"—extends the Taylor building coverage to these fixtures. This cannot be as these fixtures were not "usual and incidental" to the business conducted in that building. Furthermore, *full recovery* has been otherwise had as to the Taylor building coverage and unless the amount for which that building and its contents is insured is increased by judicial fiat, it cannot afford coverage for these fixtures.

To state that coverage is afforded because the insured expected to have such coverage when the policy clearly does not afford it simply means that the insured

can disregard the clear terms of the policy and rewrite it to suit itself. An unambiguous contract is not subject to change by construction. "A contract of insurance which is plain and unambiguous as to its meaning must be enforced according to its terms the same as any other contract." G. Bartling & Co. v. Harris Truck Lines, Inc., 175 Neb. 465, 122 N. W. 2d 243. See, also, Hazuka v. Maryland Cas. Co., 183 Neb. 336, 160 N. W. 2d 174.

I would disallow plaintiff's claim as to these fixtures. SPENCER, J., joins in this dissent.