KINNAVY v TRAILL

Docket No. 56477. Argued March 3, 1976 (Calendar No. 5).—Decided August 27, 1976. Rehearing denied 398 Mich 951.

Maureen C. Kinnavy brought a complaint for the proceeds of an accident policy against Ronald G. Traill personally and in behalf of certain underwriters at Lloyds, signatory to a Lloyds Cover Note #3443, on the death of the plaintiff's husband in the crash of an airplane while he was piloting it on his usual flight to work from Benton Harbor to Chicago. The Berrien Circuit Court, William S. White, J., granted plaintiff a partial summary judgment on the grounds that a clause in the policy excluding coverage for death resulting from being in any airplane except while a "passenger" in an approved aircraft must be construed against the insurer. After a jury trial on the issue of whether the death was accidental, the court entered a judgment for the plaintiff in the full face amount of the policy. The Court of Appeals, Allen, P. J., and J. H. Gillis and Mc-Gregor, JJ., reversed (Docket No. 17203). Plaintiff appeals. *Held:*

There is no ambiguity in the meaning of the word "passenger" in the context of the entire exclusionary clause. The exception to the exclusionary clause, when construed in accordance with the ordinary and popular meaning of the entire policy language, specifically limits the term "passenger" to mean non-operators of an aircraft. The deceased was not a passenger within the meaning of the policy.

Justice Levin concurred on the ground that although the deceased was arguably a "passenger" the ambiguous word cannot here be strictly construed against the insurer by adoption of the construction of which it is susceptible most favorable to the insured. The rule that ambiguities will be resolved against the insurer applies in the construction of contracts of insurance, not legislation regulating the form of the contract. The Legislature has authorized a broader exception than that

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 44 Am Jur 2d, Insurance §§ 1321 *et seq.,* 1434.

Insurance on aircraft; risks and losses covered. 9 ALR2d 581.

[3] 43 Am Jur 2d, Insurance § 257 *et seq.*

in the policy, and the exception is consistent with the public policy expressed in the legislation, the apparent purpose of which is to permit life insurers to except from coverage liability for death of the pilot and other crew members.

Affirmed.

56 Mich App 370; 223 NW2d 741 (1974) affirmed.

### OPINION OF THE COURT

1. INSURANCE—POLICY—EXCLUSIONARY CLAUSES—AVIATION—PASSEN- GERS—PILOTS.

An insurance policy which provided insurance coverage only while the insured was a passenger in an aircraft "tried, tested and approved" did not extend coverage to a situation where the insured met his accidental death as a pilot while flying his aircraft; the words "tried, tested and approved" do not alter the requirement that the insured be a passenger in the plane, but limit the risk of the insurance company to aircraft which are mechanically sound.

2. INSURANCE—POLICY—EXCLUSIONARY CLAUSES—AVIATION—PASSEN- GERS—PILOTS.

A clause in an insurance policy which excludes coverage for any and all aviation activity with the one exception of "a passen- ger" is not ambiguous; the interpretation an ordinary man would give the phrase is that the policy differentiates between one who operates an aircraft, a pilot, and a passenger who is carried in an aircraft.

### CONCURRING OPINION

### LEVIN, J.

3. INSURANCE—CONSTRUCTION OF CONTRACT—AMBIGUITIES.

*The rule that ambiguities will be resolved against the insurer applies in the construction of contracts of insurance, not legis- lation regulating the form of the contract.*

4. INSURANCE—LIFE INSURANCE—AVIATION—EXCLUSION—STATUTES— PUBLIC POLICY.

*The statute authorizing life insurers to issue policies limiting liability with respect to death resulting from aviation "other than as a fare-paying passenger" has an apparent purpose to permit life insurers to except from coverage liability for death of the pilot and other crew members; a narrower exception "while a passenger" is consistent with the public policy ex-*

*pressed in the legislation and should be construed consistent with that policy (MCL 500.4042; MSA 24.14042).*

*Ryan, McQuillan, Vander Ploeg & Fette* for plaintiff.

*Seymour, Seymour, Conybeare & Hosbein* and *Lord, Bissell & Brook* (by *Hugh C. Griffin)* for defendant.

FITZGERALD, J. The single question before us is whether a group insurance policy containing an exclusionary clause which does not provide coverage for death, injury or disablement while the insured is "engaged in or taking part in aeronautics and/or aviation of any description or resulting from being in any aircraft except while a passenger in an aircraft previously tried, tested and approved" extends coverage to a pilot while flying his own aircraft commuting from his employment to his home. In our view it does not.

The facts of the case are well stated by the Court of Appeals.

"Plaintiff's husband, Robert J. Kinnavy, was a vice-president of Bastian-Blessing Company, headquartered in Chicago, Illinois. The employees of Bastian-Blessing Company were insured under a group accident policy, issued by defendant in the amount of $50,000.00 for accidental death.

"Mr. Kinnavy lived in Benton Harbor, Michigan, and commuted to work each day in his personally-owned Piper-Cherokee airplane. Plaintiff would drive her husband to the airport in Benton Harbor and he would then fly to Sky Harbor airport, a small field on the northwest side of Chicago. Mr. Kinnavy kept a car at Sky Harbor airport, which he used to travel to and from his office.

"On November 13, 1969, Roger Kinnavy took his usual flight to work, left the office around 4:30 p.m. and

was never seen alive again. On December 6, 1969, the body of Mr. Kinnavy washed up on a Lake Michigan beach near New Buffalo, Michigan. The medical examiners determined that his death was caused by external-violent means, and that his injuries were of the type frequently found in aircraft fatalities.

"While no one actually saw Roger Kinnavy's plane take off or crash, the undisputed circumstantial evidence established that Mr. Kinnavy died while piloting his plane. Between 5:30 p. m. and 6:30 p.m. on the evening in question, it was noted that Kinnavy's car was parked at the Sky Harbor airport and his plane was gone. The National Weather Service in Chicago reported taking a call that night from someone on the ground, identifying himself as the pilot of 7636 J, who requested weather information on the flight route to Benton Harbor, Michigan. The South Bend airport also reported receiving a call from the pilot of 7636 J that night, requesting landing clearance. The plane, however, never came in for a landing and all contact was lost with it. There was no evidence that anyone was in the plane with Mr. Kinnavy when he left Sky Harbor, or that any other body was found, or that any other person was ever reported missing."

Plaintiff, the deceased's wife and the named beneficiary of the accident policy, sued to recover insurance proceeds and the defendant insurer refused payment. Defendant responded by claiming the affirmative defense that the policy excluded recovery for injury or death in any type of aviation endeavor. Defendant then moved for summary judgment contending that the deceased was not a "passenger" within the meaning of the exclusionary clause. Following denial of this motion, plaintiff moved for and was granted summary judgment on the basis that the exclusionary clause should be interpreted to permit recovery by a pilot's beneficiary provided the airplane was tested and approved.

At trial, the sole question was whether decedent's death was caused by accident. The jury returned a verdict for plaintiff in the amount of $50,000, the value of the insurance policy. Defendant then appealed the jury verdict and the trial court's grant of partial summary judgment in favor of plaintiff. The Court of Appeals reversed the trial court and held that the lower court erred in denying defendant's motion for summary judgment. The court ruled that the insurance policy provided coverage only while the insured was a "passenger" in an aircraft "tried, tested and approved" and did not extend coverage in situations where the insured accidentally dies while piloting his privately-owned aircraft. We granted leave to consider the correctness of that ruling.

The specific language of the group insurance policy states:

"IV. Exclusions: This contract does not cover death, injury or disablement:

\*    \*    \*

"(d) While engaged in or taking part in aeronautics and/or aviation of any description or resulting from being in any aircraft except while a passenger in an aircraft previously tried, tested and approved."

Reading the exclusionary clause as far as the word "except", the policy clearly provides that any death of an insured occasioned by his mere presence in any aircraft which engages in any type of aeronautics or aviation results in the denial of insurance benefits. To this point, no distinction is made between passenger and pilot nor the various types of airborne activity in which the insured may engage. Were the exclusionary clause limited to activity involving "aeronautics and/or aviation of any description or resulting from being in any

aircraft", there would be agreement that plaintiff, the named beneficiary, would not be entitled to death benefits.

However, the exclusionary clause also contained an exception which permits recovery by "a passenger in an aircraft previously tried, tested and approved". Plaintiff urges that strict construction of the exclusionary clause in favor of the insured requires that the ambiguous word "passenger" connote "occupant". Therefore, death benefits would be awarded to anyone killed in an aircraft provided the plane was "tried, tested and approved".

There is no ambiguity in the meaning of the word "passenger" when read in context with the entire exclusionary clause. If an operator of a private aircraft is a "passenger" there would be no need for an *exception* to the exclusionary clause. If, as plaintiff suggests, such an expansive description of aeronautical or aviation activity were contemplated by the insurer, the language "except while a passenger in an aircraft" could have been replaced by the single word "not". The exclusionary clause would then read "while engaged in or taking part in aeronautics and/or aviation of any description or resulting from being in any aircraft *not* previously tried, tested and approved". We interpret the word passenger as a purposefully-included exception to the exclusionary clause which, when construed in accordance with the ordinary and popular meaning of the entire policy language, specifically limits the term to mean non-operators of an aircraft. See *Paul Revere Life Insurance Co v First National Bank in Dallas*, 359 F2d 641 (CA 5, 1966).

In none of the authorities advanced by plaintiff does the word "passenger" appear in the same

context as the instant case. It would be a strained interpretation to believe that the parties contemplated the payment of insurance benefits for death or injury based solely upon whether the aircraft involved was "tried, tested and approved". An ordinary man would, in interpreting the exclusionary clause in the proper context, draw a distinction between pilots who operate and persons who are carried or conveyed in airplanes. In our opinion, the policy is not ambiguous and the deceased was not a "passenger" within the meaning of the policy.

Affirmed. Costs to appellees.

KAVANAGH, C. J., and WILLIAMS, COLEMAN, LINDEMER, and RYAN, JJ., concurred with FITZGERALD, J.

LEVIN, J. *(concurring).* As are many words, in or out of context, "passenger" is arguably ambiguous.[1]

Roger J. Kinnavy was a person "carried or conveyed in an * * * airplane, * * * a wayfarer; traveler",[2] a "passer-by or through".[3]

Kinnavy commuted by airplane between his office and his home in an airplane which he operated. Arguably, the exception in the policy insuring his life[4] excludes from coverage only persons

---

[1] *See Warren v Continental Casualty Co,* 248 SW2d 315 (Texas Civ App, 1952).

[2] Random House Dictionary of the English Language (unabridged ed, 1966), p 1054.

[3] The Oxford Universal Dictionary (3d ed), p 1443.

[4] "IV. Exclusions: This contract does not cover death, injury or disablement:

                    *   *   *

"(d) While engaged in or taking part in aeronautics and/or aviation of any description or resulting from being in any aircraft except while a passenger in an aircraft previously tried, tested and approved".

on an airplane primarily to provide means of
passage to others and not a person who is on the
airplane primarily as a means of traveling to the
destination.

Nevertheless, I agree that this ambiguity cannot
be "strictly construed against the insurer" by
adoption of "the construction of which it is suscep-
tible most favorable to the insured".[5]

The Legislature has authorized life insurers to
issue policies limiting liability with respect to
death resulting from aviation "other than as a
fare-paying passenger".[6] The exception in the pol-
icy insuring Kinnavy's life is narrower than the
authorized exception.

The rule that ambiguities will be resolved
against the insurer applies in the construction of
contracts of insurance, not legislation regulating
the form of the contract. The apparent legislative
purpose is to permit life insurers to except from
coverage liability for death to the pilot and other
crew members.

The language of the exception is consistent with
the public policy of this state expressed in the
legislation[7] and should be construed consistent

---

[5] *Pietrantonio v Travelers Insurance Co of Hartford, Conn,* 282
Mich 111, 116; 275 NW 786 (1937). *See also Pawlicki v Hollenbeck,*
250 Mich 38, 43; 229 NW 626 (1930); *Francis v Scheper,* 326 Mich 441,
448; 40 NW2d 214 (1949).

[6] "Nothing contained in this chapter shall be construed as prohibit-
ing a life insurer from placing in its policies provisions limiting its
liability with respect to:

"(1) Death resulting from aviation other than as a fare-paying
passenger on a regularly scheduled route between definitely estab-
lished airports." MCLA 500.4042; MSA 24.14042.

[7] Recognizing "that resolving ambiguities against the insurer would
sometimes be more favorable to the insured than would honoring
reasonable expectations", Professor Keeton asserts "that, even though
not often expressed, there has always been an implicit understanding
that ambiguities, which in most cases might be resolved in more than
just one of two ways, would be resolved favorably to the insured's
claim only if a reasonable person in his position would have expected
coverage". Keeton, Insurance Law, § 6.3(a), p 352.

with that policy.

He states the following principle:

"The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Keeton, *supra,* p 351.

*See also* Keeton, *Insurance Law Rights at Variance with Policy Provisions, Part One,* 83 Harv L Rev 961 (1970), *Part Two,* 83 Harv L Rev 1281 (1970); Perlet, *The Insurance Contract and the Doctrine of Reasonable Expectation,* 6 The Forum 116 (1971); Squires, *A Skeptical Look at the Doctrine of Reasonable Expectation,* 6 The Forum 252 (1971); Young *et al, Insurance Contract Interpretation: Issues and Trends,* Issue No 625 Insurance L J 71 (1975); Note, *The Role of Public Policy and Reasonable Expectations in Construing Insurance Contracts,* 47 Temple L Q 748 (1974).

The doctrine of reasonable expectations has been recognized in the case law. *C & J Fertilizer, Inc v Allied Mutual Insurance Co,* 227 NW2d 169 (Iowa, 1975); *Jones v Continental Casualty Co,* 123 NJ Super 353; 303 A2d 91 (1973); *Corgatelli v Globe Life & Accident Insurance Co,* 96 Idaho 616; 533 P2d 737 (1975); *INA Life Insurance Co v Brundin,* 533 P2d 236 (Alas, 1975); *Smith v Westland Life Insurance Co,* 15 Cal 3d 111; 123 Cal Rptr 649; 539 P2d 433 (1975); *Magulas v Travelers Insurance Co,* 114 NH 704; 327 A2d 608 (1974); *Nile Valley Cooperative Grain & Milling Co v Farmers Elevator Mutual Insurance Co,* 187 Neb 720; 193 NW2d 752 (1972).