**DAVENPORT PETERS COMPANY,**
Plaintiff,

v.

**ROYAL GLOBE INSURANCE COMPANY, Defendant.**

Civ. A. No. 78–334–K.

United States District Court,
D. Massachusetts.

May 21, 1980.

Ernest B. Murphy, Hemenway & Barnes, Boston, Mass., for plaintiff.

Robert W. Blakeney, Boston, Mass., for defendant.

## MEMORANDUM

KEETON, District Judge.

### I.

This matter is before the court on a Statement of Agreed Facts, filed January

1. The omitted passage includes the following

24, 1980, and cross motions for summary judgment. Plaintiff sues as the insured of comprehensive business insurance coverage written by defendant, and the court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $10,000 and the parties are citizens of different states.

### II.

The policy under which liability is claimed ("Policy") was effective from October 1, 1975 to October 1, 1978. Plaintiff also had coverage under a prior policy ("Prior Policy"), from October 1, 1972 to October 1, 1975, with an affiliate of the defendant. The terms of the Policy and the Prior Policy are in all material respects the same. On each policy, Item 1 of the Declarations under Part VII, Crime, stated the Limit of Liability under Insuring Agreement IA, Employee Dishonesty (Commercial Blanket) Coverage as $50,000.

The claim in this case is made under Insuring Agreement IA, which is as follows:

Loss of Money, Securities and other property which the Insured shall sustain, to an amount not exceeding in the aggregate the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement IA through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others.

By the terms of the clause defining "Effective Period," and subject to General Agreement C, loss under Insuring Agreement IA is covered "only if discovered not later than one year from the end" of the Effective Period.

General Agreement C provides in relevant part as follows:

C. If the coverage of an Insuring Agreement of this endorsement . . . is substituted for any prior bond or policy of insurance carried by the Insured . . . ,[1] the Company agrees that such

words: "or by any predecessor in interest of

Insuring Agreement applies to loss which . . . would have been recoverable . . . under such prior bond or policy except for the fact that the time within which to discover loss thereunder had expired, provided:

(1) the insurance under this General Agreement C shall be a part of and not in addition to the amount of insurance afforded by the applicable Insuring Agreement of this endorsement;

(2) such loss would have been covered under such Insuring Agreement had such Insuring Agreement with its agreements, conditions and limitations as of the time of such substitution been in force when the acts or events causing such loss were committed or occurred; and

(3) recovery under such Insuring Agreement on Account of such loss shall in no event exceed the amount which would have been recoverable under such Insuring Agreement in the amount for which it is written as of the time of such substitution had such Insuring Agreement been in force when such acts or events were committed or occurred, or the amount which would have been recoverable under such prior bond or policy continued in force until the discovery of such loss, if the latter amount be smaller.

Among the Conditions and Limitations applicable to Insuring Agreement IA are the following:

Limits of Liability

Section 11. Payment of loss under Insuring Agreement IA, IB, or V shall not reduce the Company's liability for other losses under the applicable Insuring Agreement whenever sustained. The Company's total liability (a) under Insuring Agreement IA for all loss caused by

any Employer [sic][2] or in which such Employees [sic][2] is concerned or implicated . . . is limited to the applicable amount of insurance specified . . . .

Except under Insuring Agreements IA, IB and V the applicable limit stated . . . is the total limit of the Company's liability with respect to all loss of property of one or more persons or organizations arising out of any one occurrence . . . . .

Regardless of the number of years this endorsement shall continue in force . . . the limit of the Company's liability . . . shall not be cumulative from year to year or period to period.

Limit of Liability Under This Policy and Prior Insurance

Section 12. This section shall apply . . . . to Insuring Agreements IA . . . . .

With respect to loss caused by any person . . . which occurs partly during the Effective Period of this endorsement and partly during the period of other bonds or policies issued by the Company to the Insured . . . and . . . allowed to expire and in which the period for discovery has not expired at the time any such loss thereunder is discovered, the total liability of the Company under this endorsement and under such other bonds or policies shall not exceed, in the aggregate, the amount carried under the applicable Insuring Agreement of this endorsement on such loss or the amount available to the Insured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss, if the latter amount be the larger.

### III.

On October 27, 1976, more than one year after the end of the Effective Period of the Prior Policy, plaintiff first discovered a loss caused by an employee in the position of

---

the Insured, which prior bond or policy if [sic] terminated, canceled or allowed to expire as of the time of such substitution." The meaning of "substituted" and "substitution," as well as the sense of the clause as a whole, becomes clearer when "if" is read as "is."

2. The meaning apparently intended becomes clearer if the word "Employee" is substituted for both "Employer" and "Employees."

financial vice president. The dishonest actions of the employee, now known, began in October of 1972 and continued to the latter part of September, 1976. Plaintiff, claiming that the $50,000 limit was a per-year-per-dishonest-employee limit rather than a per-Effective-Period-per-dishonest-employee limit, submitted three proofs of loss under the Prior Policy, and one under the current Policy, as follows:

| | | |
|---|---|---|
| a) Oct. 24, 1972—June 29, 1973 | $5,977.25 |
| b) Nov. 14, 1973—June 21, 1974 | 13,293.26 |
| c) Oct. 1974—Aug. 15, 1975 | 36,193.55 |
| d) Oct. 24, 1975—Sep. 15, 1976 | 109,651.97 |
| Grand Total | $165,116.03 |

Plaintiff also submitted claims for interest, which were rejected by defendant.

Commencing in January of 1977, plaintiff recovered the following sums from the dishonest employee or persons acting on his behalf:

| | |
|---|---|
| a. In or about January, 1977 from Cambridge Trust Company | $7,222.83 |
| b. In or about January, 1977 from National Industries | 255.61 |
| c. In or about January, 1977 from K. Peterson | 2,000.00 |
| d. In or about January, 1977 from K. Autio | 2,064.60 |
| e. In or about April, 1977 from DiMento & Sullivan | 18,000.00 |
| f. In or about November, 1977 from K. Autio | 100.00 |
| | $29,643.04 |

By letter of June 10, 1977, defendant transmitted payment of $50,000 under the 1975–78 Policy, declining to make any payment under the Prior Policy.

### IV.

Plaintiff now acknowledges that the Prior Policy affords no coverage for any of the loss since loss was first discovered more than a year after the end of the Effective Period of the Prior Policy. Plaintiff sues instead under the 1975–78 Policy, claiming that, either under a proper interpretation of ambiguous policy provisions or by application of the principle of honoring reasonable expectations, the aggregate limit of liability under the Policy is $100,000—$50,000 applicable to loss occurring during the Effective Period of the Prior Policy but discovered more than one year after the end of that period, and $50,000 applicable to loss occurring during the Effective Period of the Policy on which suit is brought.

Plaintiff's argument includes the following elements: (1) the purpose of General Agreement C was to liberalize recovery; (2) the Prior Policy contained $50,000 of Employee Dishonesty Coverage that would have applied if either the loss had been discovered before October 1, 1976 or the Prior Policy had not been allowed to expire, but the loss was not discovered until October 27, 1976 and the Prior Policy had been allowed to expire;[3] coverage is nevertheless continued for the prior period loss because General Agreement C of the new Policy provides it; (3) General Agreement C is ambiguous; since the first of its three subparagraphs says "the *insurance under this General Agreement C* shall be part of and not in addition to the amount of insurance afforded by [Insuring Agreement IA] . . . ." (emphasis added in Plaintiff's Memorandum), the emphasized language implies that General Agreement C is itself an insuring agreement and might be interpreted as providing $50,000 of coverage for a prior period that is not the same $50,000 that is provided under Insuring Agreement IA of the Policy for the Effective Period of the Policy; the third subparagraph has a simple aim—to limit recovery under General Agreement C to the lesser of the limit afforded under Insuring Agreement IA of a prior policy and a later policy; (4) the first sentence of Section 11 might be read by a reasonable person to mean that a payment under Insuring Agreement IA for a loss

---

3. As an alternative to allowing a Prior Policy to expire, one thinks first of substituting another policy before the Prior Policy was allowed to expire. Insofar as plaintiff may be suggesting as another alternative that the Prior Policy might have been extended for an additional period by endorsement, certainly there is no evidence of a practice leading to any such reasonable expectation. Moreover, such an extension would in some respects work against the interests of an Insured unless the limit of liability were changed from the per-Effective-Period form.

sustained during the Effective Period of the Policy will not reduce liability for another covered loss occasioned by an employee's dishonesty, and a loss to which General Agreement C applies is such a covered loss; (5) the provision of the third paragraph of Section 11 that a limit "shall not be cumulative from year to year or period to period" may reasonably be read as designed to preclude more than $50,000 worth of exposure for losses sustained in any three-year period and does not preclude more than $50,000 liability under one Policy, part of which is covered by Insuring Agreement IA (for loss sustained during the Policy Effective Period) and part of which is covered by General Agreement C (for loss sustained in a prior period and first discovered too late to be covered by the prior policy). Plaintiff cites *Hartford Accident & Indemnity Co. v. Collins-Dietz-Morris Co.*, 80 F.2d 441 (10th Cir. 1935), and *Globe Indemnity Co. v. Wolcott & Lincoln, Inc.*, 152 F.2d 545 (8th Cir. 1945), as supporting this construction. Plaintiff also argues (6) that Section 12 is consistent with the foregoing construction and is directed at a situation in which an insured has sustained loss during the Effective Period of the Policy and during the Effective Period of a prior policy, and the prior policy has expired but its period for discovery has not expired; Section 12 therefore does not apply when the discovery period has expired and, by negative implication, no limit such as is stated in Section 12 applies when the discovery period for the prior policy has expired.

Although these arguments demonstrate ingenuity in the search for ambiguity, they are not persuasive. Parts (1) and (2) of the argument, if accepted, might bear upon the interpretation of ambiguities found else-

where, but in themselves do not demonstrate any ambiguity. The central feature of parts (3)–(6) of the argument that is unpersuasive is the attempt to read each indication of coverage as if it were intended to be the subject of a separate limit of liability.[4] No such intent is ever expressed, and indeed a contrary intent is quite clearly expressed, in more than one place in the policy. First, part (1) of General Agreement C declares that "the insurance under this General Agreement C shall be a part of and not in addition to the amount of the insurance afforded by the applicable Insuring Agreement . . . ." In this context, "Insuring Agreement" is a clear and unambiguous reference to Insuring Agreement IA, among others. Second, the third paragraph of Section 11 declares that "the limit of the Company's liability . . . shall not be cumulative from year to year or period to period." Both by its title, "Limits of Liability Under This Policy and Prior Insurance," and by its text, Section 12 plainly gives notice that it deals with the aggregate recovery under two or more policies and not with recovery under two or more insuring provisions of this policy. For this reason there is no justification for reading into it a negative implication, such as is suggested in part (6) of plaintiff's argument, merely because it fails to say again, as is said in the next preceding Section, that the limit of liability under this policy itself shall not be cumulative from period to period when the different insuring clauses of this policy extend coverage to more than one Effective Period.

▪ In summary, then, the provisions of the Policy, though complex in organization and in sentence structure, and flawed by clerical errors, are not ambiguous in rela-

---

**4.** *Collins-Dietz-Morris* and *Wolcott & Lincoln*, cited by plaintiff, do not support such a reading of the policy. Indeed, *Wolcott & Lincoln*, holding that the insured under two "Depositors Forgery Bonds" was entitled to recover $10,000 under each, for a total of $20,000, explicitly declared that the purpose and effect of a clause in the second bond was

to prevent an insured from claiming that the total liability of the [indemnity company] under both the [second] bond and the rider

[attached to the second bond] was not limited to the amount specified in the [second] bond. It is conceivable that, without such a paragraph, an insured might assert that losses under the bond and losses under the rider were covered separately to the full limit of liability.

152 F.2d at 548. This obiter dictum supports the position of the defendant in the present case.

tion to the limit of liability applicable in the circumstances of this case.

■ This conclusion does not end an inquiry into applicability of the doctrine of honoring reasonable expectations—a doctrine that has been recognized in a growing number of states within the last two decades. The development of this doctrine was foreshadowed in a New Jersey decision of the early 1960s, *Kievit v. Loyal Protective Life Ins. Co.*, 34 N.J. 475, 482, 170 A.2d 22, 26 (1961). The most distinctive feature of the doctrine is that it applies to expectations that are objectively reasonable even though painstaking study of the policy provisions would have negated those expectations. *E. g., Perrine v. Prudential Ins. Co.*, 56 N.J. 120, 265 A.2d 521 (1970); *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169 (Iowa 1975). This doctrine is now recognized in at least ten states in a form explicitly going beyond merely resolving ambiguities against insurers.[5]

■ A principle of honoring reasonable expectations, not formally developed as a doctrine explicitly going beyond the inherent limitations of merely resolving ambiguities, no doubt had earlier influence and continues to influence current decisions in states other than those in which the doctrine is formally recognized. Even when formally recognized or informally influential, however, the principle of honoring reasonable expectations is no guarantee of victory for a plaintiff against an insurer.[6] The present case is an apt illustration of this point. Despite the skill and ingenuity of counsel applied to the development of plaintiff's argument, nothing has been called to the court's attention—nothing, for example, about the structure, content, man-

5. *Lambert v. Liberty Mutual Ins. Co.*, 331 So.2d 260 (Ala.1976) (doctrine of reasonable expectations explains Alabama rule allowing the stacking of insurance policies); *National Indem. Co. v. Flesher*, 469 P.2d 360 (Alaska 1970) (liability insurer's duty to defend when facts within coverage, even though alleged claim was within exception); *Smith v. Westland Life Ins. Co.*, 15 Cal.3d 111, 539 P.2d 433, 123 Cal.Rptr. 649 (1976) (rejection of application for life insurance; coverage under binding receipt continued since premium had not yet been returned); *Corgatelli v. Globe Life & Acc. Ins. Co.*, 96 Idaho 616, 533 P.2d 737 (1975) (accident coverage for injury suffered in attempt to ride Brahma bull); *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169 (Iowa 1975) (five of nine justices invoked the doctrine of reasonable expectations and unconscionability; three invoked a theory of implied warranty; four dissented, rejecting all three theories); *Rodman v. State Farm Mut. Ins. Co.*, 208 N.W.2d 903, 905–08 (Iowa 1973) (explicitly declaring that Iowa adheres to the doctrine of reasonable expectations but deciding that the policy exclusion in the instant case did not deny reasonable expectations); *Nile Valley Cooperative Grain & Milling Co. v. Farmers Elevator Mut. Ins. Co.*, 187 Neb. 720, 193 N.W.2d 752 (1972) (fire insurance); *Prudential Ins. Co. v. Lamme*, 83 Nev. 146, 425 P.2d 346 (1967) (life insurance binding receipt); *Magulas v. Travelers Ins. Co.*, 114 N.H. 704, 327 A.2d 608 (1974) (fire insurance); *Perrine v. Prudential Ins. Co.*, 56 N.J. 120, 265 A.2d 521 (1970) (life insurance double indemnity); *Klos v. Mobil Oil Co.*, 55 N.J. 117, 259 A.2d 889 (1969); *Gerhardt v. Continental Ins. Cos.*, 48 N.J. 291, 225 A.2d 328 (1966) (brochure advertising as to effective date of accident insurance); *Allen v. Metropolitan Life Ins. Co.*, 44 N.J. 294, 305, 208 A.2d 638, 644 (1965) (life insurance binding receipt); *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. den. sub nom. Nationwide Life Insurance Co. v. Collister*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979) (life insurance binding receipt). See also *INA Life Ins. Co. v. Brundin*, 533 P.2d 236 (Alaska 1975); *Steigler v. Insurance Co. of North America*, 384 A.2d 398 (Del.1978); *Ohio Casualty Insurance Co. v. Stanfield*, 581 S.W.2d 555 (Ky.1979); *Harr v. Allstate Ins. Co.*, 54 N.J. 287, 255 A.2d 208 (1969); *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870 (1968); *Elliott Leases Cars, Inc. v. Quigley*, 373 A.2d 810 (R.I.1977); *Fritz v. Old Am. Ins. Co.*, 354 F.Supp. 514 (S.D.Tex.1973) (mail-order insurance; *Erie* estimate of what Texas courts will hold). Concurring and dissenting opinions indicate further potential support for the doctrine: *e. g., Urtado v. Shupe*, 33 Colo.App. 162, 517 P.2d 1357, 1360 (1973), *aff'd sub nom. Urtado v. Allstate Ins. Co.*, 187 Colo. 24, 528 P.2d 222 (1974) (dissent; drive-other-cars coverage); *Lewis v. Aetna Ins. Co.*, 264 Or. 314, 323, 505 P.2d 914, 918 (1973) (concurring; hull insurance); *Morgan v. State Farm Life Ins. Co.*, 240 Or. 113, 118–22, 400 P.2d 223, 225–27 (1965) (dissent).

6. See, *e. g., Lambert*, n. 5 *supra*; *Continental Ins. Co. v. Bussell*, 498 P.2d 706 (Alaska 1972); *Herzog v. National Am. Ins. Co.*, 2 Cal.3d 192, 465 P.2d 841, 84 Cal.Rptr. 705 (1970); *Rodman*, n. 5 *supra*; *Bracy v. American Family Mut. Ins. Co.*, 189 Neb. 631, 204 N.W.2d 174 (1973).

ner of printing of the policy, or the methods and practices of marketing—that would create reasonable expectations of a higher limit of coverage under the Policy than the limit stated in the applicable declaration. Under these circumstances, the doctrine of reasonable expectations is of no avail. It is therefore unnecessary to consider whether plaintiff is correct in contending that Massachusetts decisions are consistent with the doctrine, though not explicitly embracing it, and that *Marston v. American Employers Ins. Co.*, 439 F.2d 1035 (1st Cir. 1971) establishes that in the First Circuit, at least in the absence of controlling state law to the contrary, the reasonable expectations doctrine is applied.

Other contentions of the plaintiff, regarding interest and disallowance of credits for recoveries the plaintiff has effected from the dishonest employee and others acting on his behalf, are moot in view of the conclusion that defendant has already paid the limit of its liability under the Policy.

Defendant's motion for summary judgment on the stipulated facts is allowed and judgment will be entered for the defendant with costs.